[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
Defendant-appellant, Gary L. Enz, appeals from a judgment and decree of divorce as it relates to the division of property and the award of attorney fees. Mr. Enz contends that the trial court erroneously determined a portion of his Merrill Lynch account to be marital property. He further contends that the trial court erred by failing to reduce the amount of the proceeds realized from the exercise of stock options by the amount of income tax paid on those proceeds prior to dividing them between the parties. He next claims that the trial court erred by failing to award him a portion of the equity in the marital residence as his separate property. Mr. Enz also contends that the trial court erred by utilizing different dates for the valuation of assets. Finally, he contends that the trial court erred by admitting all of Ms. Enz's exhibits, and by awarding her $1,000 in attorney fees.
We conclude that the trial court did not err in its division of the Merrill Lynch account, and that its determination as to the amount of the account constituting nonmarital funds is supported by the record. We further conclude that the trial court did not err in regard to the division of the proceeds from the exercise of the stock option or the marital residence because Mr. Enz failed to present evidence to support his claims on those issues. We also find that Mr. Enz did not properly preserve for appeal his argument regarding the valuation date of certain assets. Finally, we conclude that the trial court did not err in the admission of the exhibits or in awarding attorney fees. Accordingly, the judgment of the trial court is Affirmed.
 I
The parties were married in September, 1989. Ms. Enz filed a complaint for legal separation in April, 1996. A hearing on the complaint was held before a Magistrate. At that time, Ms. Enz was permitted to amend her complaint to state an action for divorce.
The Magistrate's Decision disposed of the parties' property, and awarded attorney fees to Ms. Enz. The Magistrate did not grant Ms. Enz's request for spousal support. Of relevance to this appeal, the Magistrate awarded Ms. Enz a portion of Mr. Enz's retirement benefits held in a Merrill Lynch account, as well as a portion of the proceeds from the exercise of some of Mr. Enz's stock options. Finally, the Magistrate awarded Ms. Enz the marital residence, as well as $1,000 in attorney fees.
Mr. Enz filed objections to the decision. The trial court modified the Magistrate's opinion by ruling that a portion of the Merrill Lynch account was Mr. Enz's nonmarital property. In all other respects, the trial court adopted the decision of the Magistrate. From this judgment, Mr. Enz appeals.
 II
Mr. Enz's First Assignment of Error is as follows:
 [THE TRIAL] COURT ERRED IN GRANTING PLAINTIFF ONE HALF OF THE MERRILL LYNCH ACCOUNT IN THE AMOUNT OF $228,239.00.
Mr. Enz contends that the trial court erred by awarding Ms. Enz half of the monies maintained in his Merrill Lynch retirement account.[1] In support, he argues that most of the funds in that account are his non-marital, separate property, which should not have been awarded to Ms. Enz.
Mr. Enz has failed to comply with App. R. 16(A)(6) and (D) by neglecting to refer us to any portion of the record relating to his argument. He has also failed to make reference to the place in the record where the trial court's error is reflected, in violation of App. R. 16(A)(3).
However, our review of the record shows that the Merrill Lynch account is comprised of monies derived from Mr. Enz's pension plan and profit-sharing plan stemming from his employment at Fifth Third Bank, as well as monies earned from the sale of stocks that he earned while working with Third Savings and Loan Company. These funds were "rolled over" into the Merrill Lynch account during the parties' marriage. The record further shows, and Mr. Enz appears to admit, that the Third Savings and Loan Company stocks were earned and sold during his marriage to Ms. Enz; and were properly considered as marital property.
Therefore, Mr. Enz's argument focuses on the portion of the Merrill Lynch account that was derived from his Fifth Third Bank pension and profit-sharing funds, which he claims were entirely earned prior to the marriage. He also claims that he did not contribute to those funds during the marriage. Thus, he argues that all monies derived from his Fifth Third Bank funds are either retirement benefits earned prior to the marriage or the interest income (passive income) earned on those benefits, and are not subject to division.
"In dividing property in divorce proceedings, the trial court is required to classify assets as marital or nonmarital and then award each spouse his or her separate, nonmarital property." Peckv. Peck (1994), 96 Ohio App.3d 731, 734. When classifying property, the trial court has broad discretion, and its orders will not be disturbed on appeal unless the court abused its discretion. Id. An abuse of discretion connotes a judgment that is unreasonable, arbitrary or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219.
"Retirement benefits acquired by either spouse during the marriage constitutes [sic] `marital property', which must be equitably divided between the parties in a divorce action." Irwinv. Irwin (May 11, 1993), Greene App. No. 92-CA-0054, unreported. "However, passive income, that is, income acquired other than as a result of either spouse's labor or contributions, and premarital deposits by a spouse into a retirement account as well as the subsequent appreciation on those premarital deposits, constitute separate property which the trial court need not divide." Id.
Mr. Enz did not present any evidence regarding the amount of the Fifth Third Bank pension and profit-sharing plans that he claims was earned prior to his marriage to Ms. Enz. Moreover, during the divorce hearing, Mr. Enz repeatedly stated that he could not estimate the amount of the funds that were placed in those accounts prior to the marriage. He also testified that he did not know how much interest had accumulated on any of the pre-marital funds. Based upon this testimony, the Magistrate ruled that the entire Merrill Lynch account was marital property.
While Mr. Enz hangs his hat on his argument that he did not contribute to the Fifth Third Bank funds during the marriage, we note that he also testified that the bank made regular contributions to the profit-sharing plan. Given that the evidence before us indicates that Mr. Enz worked at Fifth Third Bank during his marriage, his testimony could reasonably be construed as supporting a finding that the bank made regular contributions to the fund during his marriage. Finally, we must note that we are unable to find any evidence in the record to support a claim that all of the Fifth Third Bank funds were pre-marital funds.
The only evidence presented regarding the amount of any pre-marital portion of the Fifth Third Bank funds was an exhibit introduced by Ms. Enz. The exhibit is a copy of a Report and Recommendation issued by a referee in Mr. Enz's divorce action from his prior wife, Elizabeth Enz. It appears to have been filed in the Miami County Common Pleas Court approximately five months before Mr. Enz's marriage to Jane Enz. The document states that Mr. Enz stipulated in that prior divorce proceeding that his Fifth Third Bank profit-sharing plan was valued at $8,423, and that he had an ESOP plan with the bank, which had a total value of $18,435. However, when confronted with the exhibit, Mr. Enz was still unable to give any testimony regarding the amount of the accounts that was in existence at the time of his marriage to Jane Enz.
Based upon this exhibit, the trial court modified the Magistrate's decision and ruled that $18,435 of the Merrill Lynch account constituted pre-marital funds that were not subject to division. The decision also indicates that the trial court would have awarded Mr. Enz any portion of the account that was the product of passive income, or interest on the pre-marital portion of the funds, had Mr. Enz presented any evidence showing that the funds had in fact accumulated interest.
Given the complete failure of Mr. Enz to trace any portion of the non-marital funds he claims were included in the Merrill Lynch account, we conclude that the trial court could have reasonably found the entire account to be marital. However, the record could also reasonably support a finding that some portion of the funds from the Fifth Third Bank funds rolled over into the account is non-marital. Therefore, we cannot say that the trial court abused its discretion by finding only $18,435 of the funds to be pre-marital property.
Accordingly, Mr. Enz's First Assignment of Error is overruled.
 III
Mr. Enz's Second Assignment of Error states as follows:
 THE TRIAL COURT ERRED AND IT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE WHEN THE COURT SET THE VALUE OF STOCK OPTIONS EXERCISED MARCH 1, 1996.
Mr. Enz contends that the trial court erred by failing to reduce the proceeds earned from the exercise of his Third Savings and Loan Company stock options by the amount of income tax he incurred by reason of exercising the options. His entire argument in support of this assignment reads as follows:
 The gross sale price of the sale of Third Savings and Loan Company stock was $267,280.00; the option price was $141,000.00, the difference being $126,280.00 before tax. [Mr Enz] testified (T 33) that he paid $30,000.00 to IRS [sic] as tax on this sale, thus reducing the gain from $126,280.00 to $96,280.00, thus the marital property should be reduced from $126,280.00 as found by the Magistrate to $96,280.00.
Again, Mr. Enz fails to refer us to any portion of the record supporting his claim that he paid $30,000 in income tax as a result of exercising his stock option. In his brief he states that he testified to the amount of taxes at page thirty-three of the transcript; however, the referenced page contains only Ms. Enz's testimony.
Our review of the entire transcript and record reveals that Mr. Enz exercised his stock options in 1996. He testified that when he exercised the options, the company paid him, "through payroll," the difference between the selling price of the stock and the option price. When questioned as to whether taxes were withheld on the payment from the company, Mr. Enz merely replied, "[a] lot of taxes."
Later in the transcript,[2] when Mr. Enz was being questioned about a withdrawal from his Merrill Lynch cash management account, he testified that he had made a withdrawal of $38,000, and deposited it into a checking account. When asked if that money was still in the checking account, Mr. Enz testified that it had taken "the form of a check to [the] IRS for over thirty thousand dollars." However, Mr. Enz's testimony fails to make any connection between the tax payment and the stock options.
We note that a W-2 Form was entered as an exhibit showing that Third Savings withheld taxes in the amount of $40,132.39 from Mr. Enz's wages for 1996. Although the W-2 does show that substantial taxes were withheld for 1996, it does not allow us to differentiate between taxes withheld for the wages, bonuses, or stock options that Mr. Enz testified he earned for that year. Finally, we note that during his testimony, Mr. Enz admitted that he had testified in a previous deposition that the net amount of proceeds received after paying taxes on the stock options was $126,280, the exact amount divided by the trial court.
Based upon the record before us, we conclude that Mr. Enz failed to present any evidence upon which the trial court could determine the amount of taxes paid. Furthermore, there is evidence in the record upon which the trial court could reasonably have relied in determining that the amount of gain divided by the Magistrate as marital property was in fact the net amount after taxes. It was incumbent upon Mr. Enz to present evidence sufficient to support his claims; his failure to do so does not provide grounds for reversing the decision of the trial court.
Mr. Enz's Second Assignment of Error is overruled.
 IV
Mr. Enz's Third Assignment is as follows:
 THE COURT ERRED AND IT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE WHEN IT AWARDED PLAINTIFF $23,000.00 AS SEPARATE PROPERTY IN THE 295 GREEN OAK PROPERTY AND FAILED TO AWARD DEFENDANT $26,000.00 AS SEPARATE PROPERTY.
Mr. Enz contends that the trial court erred by failing to find that a portion of the equity in the marital residence located at 295 Green Oak Drive was his separate property[3]. His argument in support is at best confusing. Mr. Enz contends that the trial court erroneously ruled that he did not "put any money down" on the parties' prior marital residence located at 1750 Laurel Creek Drive. He further claims that this finding was wrong because he has "paid in excess of $26,000.00 as a down payment on the Laurel Creek property." He then refers us to testimony of Ms. Enz indicating that Mr. Enz had paid $25,486 out of his nonmarital funds in order to reduce the amount of debt secured by a second mortgage on the Laurel Creek property.
After distilling Mr. Enz's argument to its barest essence, we understand his claim to be as follows. Mr. Enz believes that since he utilized $26,000 of his nonmarital funds to reduce the indebtedness on the parties' first marital residence, the trial court should have awarded him $26,000 of the equity in the parties' second marital residence (Green Oak Drive) as his separate property. While we would tend to find this argument tenable on its face, we conclude that the underlying facts do not support his claim.
The record reveals that when the parties' originally purchased the Laurel Creek property, Ms. Enz used slightly less than $23,000 of her nonmarital funds to make a down-payment on the residence. Approximately five months later, Mr. Enz utilized his nonmarital funds to reduce the second mortgage on the home. The evidence also reveals that upon selling the Laurel Creek residence, the parties received proceeds from the sale in the amount of approximately $51,000; a sum which is only about $3,300 more than the total amount of nonmarital funds invested in the residence by the parties. The evidence also establishes that the non-marital funds were restored to each party individually, and that they both received a slight profit from the sale.
The record further reveals that Ms. Enz then used her restored funds to make a down-payment on the Green Oak property. The record supports the trial court's finding that she was able to trace the down-payment monies as her separate property. Mr. Enz did not present, and we were unable to find, any evidence that he applied any of his separate funds to the new residence.
Based upon the evidence, we cannot conclude that the trial court erred. Therefore, Mr. Enz's Third Assignment of Error is overruled.
 V
Mr. Enz asserts the following as his Fourth Assignment of Error:
 THE TRIAL COURT ABUSED ITS DISCRETION IN ARBITRARILY ASSIGNING DATES FOR THE VALUATION OF ASSETS, TO WIT: BY ASSIGNING VALUATION AS OF THE DE FACTO DATE OF TERMINATION OF THE MARRIAGE AS TO SOME ASSETS AND A DATE SUBSEQUENT AS TO OTHER ASSETS.
Mr. Enz claims that the trial court abused its discretion by using different dates for the termination of the marriage in its valuation of some of the assets at issue in the divorce proceedings. His argument is hard to follow.
Specifically, Mr. Enz refers us to his Fifth Third Bank checking account and certificate of deposit. He argues that the checking account and a certificate of deposit were created from the sale of stock owned by him prior to the marriage. He claims that these accounts were worth $55,000 and $12,000, respectively, as of March 1, 1996. He refers to this date as "the de facto end of the marriage."
Apparently, Mr. Enz contends that the court erred by utilizing the March 1, 1996 date in deciding the value of these assets, which he claims are nonmarital. In support of this argument, he states that the trial court also included as a marital asset the proceeds from the exercise of the Third Savings and Loan Company stock options, which took place in November, 1996. Mr. Enz argues that the "trial court's selection of dates so as to include assets of defendant at the time of the de facto end of marriage and assets produced eight months subsequent to the separation of the parties is an abuse of discretion on its face."
Again, Mr. Enz fails to provide a reference to the record in support of his argument. In any event, the record reveals that the Magistrate utilized the March, 1996 values for the checking account and certificate of deposit. The trial court merely affirmed the Magistrate's decision as to the valuation date. Mr. Enz did not raise any objection to the Magistrate's decision regarding the valuation dates.
Therefore, Mr. Enz has not properly preserved this error pursuant to Civ.R. 53(E)(3)(b), which provides that "[a] party shall not assign as error on appeal the court's adoption of any finding of fact or conclusion of law unless the party has objected to that finding or conclusion under this rule." Thus, we need not consider this issue on appeal.
Even had he properly preserved this issue for review, we would conclude that the trial court did not err. The record does not support Mr. Enz's claim that the accounts were nonmarital. Instead, it reveals that during the marriage, as of March 1, 1996, Mr. Enz was in possession of the checking account and the certificate of deposit. The record further reveals that Mr. Enz had expended portions of these accounts during the pendency of the divorce. He did not provide evidence as to the balance of the accounts as of the date of the hearing, or as to how the funds were expended. Given that the evidence before the Magistrate indicated that as of March 1, 1996, Mr. Enz was in possession of these accounts, and that he failed to adequately account for them as of the date of the hearing, we cannot say that it was error to use the March 1, 1996 balance in determining the appropriate division of the accounts.
This assignment of error is overruled.
 VI
Mr. Enz's Fifth Assignment of Error is as follows:
 THE COURT ERRED IN ADMITTING PLAINTIFFS [SIC] EXHIBITS.
Mr. Enz contends that the trial court erred by admitting the sixteen exhibits submitted by Ms. Enz. In support, he argues that all of the exhibits are "hearsay and not authentication [sic]." He relies upon Evid.R. 1002 in support of his claim that Ms. Enz should have produced original documents.
Mr. Enz fails to refer us to the place in the record where the error is reflected, or where he preserved the error by objection. He also fails to tell us how he was affected or prejudiced by the trial court's reliance, if any, upon the exhibits other than to state that "[i]n making its findings the Magistrate had to consider the hearsay or he could not have come to this conclusion."
After reviewing the transcript, we find that Mr. Enz did raise an objection to the exhibits on the basis that they were not original documents. Thus, we conclude that Mr. Enz believes that the "best evidence rule" controls this case, and that the trial court should have required the introduction of the original documents. The "best evidence rule," codified in Evid.R. 1002, states:
 To prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by statute enacted by the General Assembly not in conflict with a rule of the Supreme Court of Ohio.
Were Evid.R. 1002 the only evidentiary rule relevant to this issue, we might find Mr. Enz's argument more persuasive. However, Evid R. 1003 provides exceptions to the requirement of producing original documents. Specifically, Evid.R. 1003 states:
 A duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original.
To constitute a "duplicate," the copy must be "produced by the same impression as the original, or from the same matrix, or by means of photography, including enlargements and miniatures, or by mechanical or electronic re-recording, or by chemical reproduction, or by other equivalent techniques which accurately reproduces the original." Evid.R. 1001(4). In this case, the majority of the exhibits are photocopies, and thus, are duplicates as defined by Evid.R. 1001(4).[4]
The Staff Notes to Evid.R. 1003 indicate that a duplicate is the equivalent of an original, and hence, is the best evidence. See State v. Williams (1982), 7 Ohio App.3d 160, 161. Furthermore, the Staff Notes indicate that the party opposing the introduction of the duplicate as the best evidence has the burden or proving that there is a genuine question as to the authenticity of the original or that it would be unfair to admit the duplicates. Doctors Bldg. Partnership v. Cedar Creek Realty (June 23, 1995), Lucas App. No. L-94-060, unreported. Finally, the Staff Notes provide that the objection must be "something more than a frivolous objection." State v. Williams, at 161. In this case, other than making a general assertion that the duplicates were hearsay and were not authenticated, Mr. Enz failed to raise a specific challenge regarding the authenticity of the original documents. Furthermore, we are unable to find any claim regarding the fairness of the substitution of the duplicates in lieu of the originals.
The admissibility of the duplicate is within the discretion of the trial court. Lakeview Dairy Services, Inc. v. Dangler
(1989), 65 Ohio App.3d 753, 757. Based upon the record before us, we cannot say that the trial court erred by admitting the exhibits.
Moreover, as we previously stated, Mr. Enz as failed to state how he was prejudiced by the admission of the exhibits. While he does argue that the Magistrate had to rely upon the hearsay portions of the documents in order to reach his decision, he fails to specify the portions of the decision which were affected by the introduction of the exhibits. Therefore, we will address the exhibits only as they relate to the specific findings raised in this appeal.
We conclude that the issues raised in this appeal were decided on the basis of Mr. Enz's failure to present evidence in support of his claims, rather than on the basis of any exhibit introduced by Ms. Enz. Specifically, Mr. Enz failed to present any evidence to support his claim that the Merrill Lynch funds rolled over from the Fifth Third Bank plans were non-marital. (See Assignment of Error Number One). In fact, the one exhibit submitted on that issue was presented by Ms. Enz and provided some support for Mr. Enz's argument. Therefore, we cannot say that he was prejudiced by its introduction. Likewise, the trial court's decisions regarding the valuation of the Third Savings and Loan Company stock, and the status of the equity in the marital residence (Assignment of Error Numbers Two and Three) were based on the failure to Mr. Enz to present any proof of his arguments rather than upon any of the exhibits submitted by Ms. Enz. Finally, the decision regarding the award of attorney fees (Asignment of Error Number Six) was not based upon any exhibit.
If there were instances in which the trial court's reliance upon Ms. Enz's exhibits resulted in prejudice, Mr. Enz should have specifically raised them on appeal, rather than leaving us to speculate how the exhibits affected the outcome. Since no other portions of the decision were addressed on appeal, we presume that there was no prejudice resulting from the use of the exhibits.
Mr. Enz's Fifth Assignment of Error is overruled.
 VII
Mr. Enz's Sixth Assignment of Error is:
 THE COURT ERRED IN REQUIRING DEFENDANT TO PAY $1,000.00 AS AND FOR ATTORNEY FEES TO THE PLAINTIFF.
Mr. Enz contends that the trial court erred by awarding attorney fees to Ms. Enz because she offered no evidence concerning the reasonable value of attorneys fees. He does not cite any authority for his argument.
The assessment of attorney fees against a party in a divorce proceeding is provided for in R.C. 3105.18(H). The award of attorney fees is within the sound discretion of the trial court and will not be reversed absent an abuse of that discretion.Walker v. Walker (1996), 112 Ohio App.3d 90, 93.
Mr. Enz does not take issue with the trial court's finding that Ms. Enz was entitled to an award of attorney fees. Rather, his argument, which centers on the lack of evidence as to the reasonableness of the fees, is directed solely to the amount of the fees awarded.
We have stated that "where the amount of the attorney's time and work is evident to the trier of fact, an award of attorney fees, even in the absence of specific evidence to support the amount, is not an abuse of discretion." Woloch v. Foster (1994),98 Ohio App.3d 806, 813. In this case, the amount of time expended by counsel at the hearing was observed by the court, and the court had the pleadings to examine before making the award. From our review of the record in this case, we cannot say that the fee awarded was unreasonable, or that the trial court abused its discretion in setting the amount of the fee at $1,000.00.
Mr. Enz's Sixth Assignment of Error is overruled.
 VII
All of Mr. Enz's assignments of error having been overruled, the judgment of the trial court is Affirmed.
WOLFF, and GRADY, JJ., concur.
Copies mailed to:
Roger E. Luring
J. Richard Gaier
Hon. Robert Lindeman
[1] The final divorce decree issued by the trial court actually reflects that the trial court awarded Ms. Enz more than half of the Merrill Lynch account.
[2] Specifically, in reviewing the transcript, we find that the only reference to a tax of $30,000 is at page 133. We presume that, in advancing his argument, Mr. Enz intended to refer us to page 133 of the transcript, wherein he is testifying, rather than to page thirty-three of the transcript, wherein Ms. Enz testifies.
[3] Although Mr. Enz assigns as error the trial court's decision to grant Ms. Enz a portion of the equity in the marital residence as her separate property, he fails to advance any argument regarding that issue.
[4] The remainder of the exhibits consist of real estate appraisals as well as some exhibits prepared by Ms. Enz to illustrate her testimony graphically. We presume that Mr. Enz does not object to the real estate appraisals, since he stipulated that they could be admitted without objection.