## Cole v. Cole
### [Cite as 8 AOA 264]

*Case No. E-90-7*
*Erie County, (6th)*
*Decided November 2, 1990*

*Mary M. Hieshetter, for Appellee.*

*Billy Joe Cole, pro se.*

This is an appeal from a judgment of the Erie County Court of Common Pleas which denied a motion for temporary suspension of child support while appellant was incarcerated.

Appellant, Billy Joe Cole, and appellee, Kathy Ann Cole, were divorced by decree on August 29, 1989. Appellee was awarded custody of the parties' minor children, Christopher, born on June 29, 1985, and Misty, born on January 1, 1987. Appellant was granted visitation and companionship rights and ordered to pay $88.58 plus poundage per week in child support. At the time of the divorce,

appellant was employed at the Ford Motor Company with a gross annual income of over $19,000.

On January 3, 1990, appellant filed a motion requesting the temporary suspension of his child support obligation. Specifically, appellant stated that he was incarcerated in the Madison correctional Institute and that this circumstance rendered payment of child support impossible. Appellant asked that the suspension of the child support obligation be made retroactive to the date of his sentencing, September 1, 1989.

On June 26, 1990, the trial court filed a judgment entry which found that appellant was currently incarcerated. However, the court further found that "due to the voluntary nature of the acts which resulted in the incarceration of the Defendant, the Court finds that a suspension of his child support obligation is unwarranted." The court then, without holding a hearing, denied appellant's motion.

From that judgment, appellant filed a timely notice of appeal. He asserts three assignments of error:

"1. THE TRIAL COURT ERRED, AS A MATTER OF LAW, IN DETERMINING THAT DEFENDANT-APPELLANT'S INCARCERATION, EVEN IF THE RESULT OF A VOLUNTARY ACT, CONSTITUTED VOLUNTARY UNEMPLOYMENT OR UNDEREMPLOYMENT SO AS NOT TO WARRANT SUSPENSION OR MODIFICATION OF DEFENDANT-APPELLANT'S CHILD SUPPORT OBLIGATION.

"2. THE TRIAL COURT ABUSED ITS DISCRETION IN REFUSING TO MODIFY APPELLANT'S CHILD SUPPORT OBLIGATION.

"3. THE TRIAL COURT'S DECISION FAILING TO SUSPEND OR MODIFY DEFENDANT-APPELLANT'S CHILD SUPPORT OBLIGATION WHILE HE IS INCARCERATED AND UNABLE TO PAY CHILD SUPPORT VIOLATES BOTH THE EIGHTH AMENDMENT'S PROHIBITION OF CRUEL AND UNUSUAL PUNISHMENT AND THE EQUAL PROTECTION OF THE FOURTEENTH AMENDMENT."

Appellant's first and second assignments of error address issues directly related to the

trial court's denial of the motion to suspend child support payments. They shall, therefore, be considered together.

Modification of a child support order involves a two-step process. *Cheek v. Cheek* (1982), 2 Ohio App. 3d 86, 87. First, the trial court must decide whether the movant has demonstrated a change of circumstances. *Id.* See, also, *Bright v. Collins* (1982), 2 Ohio App. 3d 421, 423. Second, after a change of circumstances has been demonstrated, the court, in considering all the relevant factors as found in R.C. 3199.05(A), may make an appropriate modification. *Cheek, supra,* at 87. The trial court has considerable discretion in determining whether a child support order should be modified. *Murphy v. Murphy* (1984), 13 Ohio App. 3d 388, 389. Therefore, the trial court's judgment cannot be reversed absent a finding of abuse of discretion, that is, a finding that the court's attitude in making its decision was unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St. 3d 217, 219.

In this case, appellant asserts that the trial court abused its discretion by failing to consider the factors delineated in R.C. 3109.05(A). The trial court determined that incarceration did not satisfy the change of circumstances requirement in the two-step process employed to determine a motion for modification of child support. The lower court did not, therefore, reach a consideration of the factors delineated in R.C. 3109.05(A). If the court's assessment of the grounds supporting appellant's motion for modification is correct, then it did not need to engage in the second step of the analysis and did not abuse its discretion in failing to do so.

Appellant contends that the fact of incarceration, in and of itself, constitutes a change of circumstances.

Whether incarceration may constitute a change of circumstances has been considered by at least one other Ohio appellate court. *Peters v. Peters* (Sept. 4, 1990), Warren App. No. CA90-02-005, unreported. In *Peters, supra,* the Twelfth District Court of Appeals found that the criminal act leading to a criminal conviction of the obligor was voluntary. However, the court concluded that any incarceration, which led to the reduction of the obligor's income, was not voluntary. The *Peters* court analogized incarceration to a situation where the obligor's employment is terminated due to some act on his part which rendered the action on the part of the employer necessary. The court further held that, as a matter of public policy, requiring appellant to continue to pay his current child support would expose him to a criminal contempt prosecution for failure to pay the child support during his imprisonment. The *Peters* court concluded that it would be unconscionable to criminally punish an obligor for "neglecting to do what state action prevented him from doing." The dissent in *Peters, supra,* emphasized the fact that it was the obligor's own voluntary criminal act which caused the incarceration and pointed out that it seemed unlikely that a court could find appellant in contempt for nonpayment of child support while unable to pay as a result of his incarceration.

Other states are divided over the issue of whether incarceration constitutes a change of circumstances and should result in a reduction of the child support obligation. See *Leasure v. Leasure* (Pa. Super. Ct. 1988), 549 A. 2d 225; *Nab v. Nab* (Idaho App. 1988), 757 P. 2d 1231; *Pierce v. Pierce* (Mich. App. 1987), 412 N.W. 2d 291; *Foster v. Foster* (N.Y. 1984), 99 A.D. 2d 284, 471 N.Y.S. 2d 867; *Clemens v. Collins* (Alaska 1984), 679 P. 2d 1041; *Edmonds v. Edmonds* (Or. App. 1981), 633 P. 2d 4 (granting modification). But, cf. *Harper v. Barrows* (Del. 1990), 570 A. 2d 1180; *Proctor v. Proctor* (Utah App. 1989), 773 P. 2d 1389; *Parker v. Parker* (Wis. App. 1989), 447 N.W. 2d 64; *Ohler v. Ohler* (Neb. 1985), 369 N.W. 2d 615; *Noddin v. Noddin* (N.H. 1983), 455 A. 2d 1051; *In re Marriage of Vetternack* (Iowa 1983), 334 N.W. 2d 761 (denying modification).

In those cases where the state courts determined that a modification of child support was warranted on the ground of incarceration, the fact that the ordered support would be virtually uncollectible was often the underlying rationale for that judgment. *Nab, supra,* at 1238 (adding to the financial burden of the obligor at the time he can least afford it is unfair); *Pierce, supra,* at 293 (heavy financial load on the obligor is not in the best interest of the child); *Leasure, supra,* at 227 (child support does not help the child but only adds to the burden of the obligor when he can least bear it); *Edmonds, supra* (a man cannot be ordered to do the impossible). In *Clemens, supra,* the Supreme Court of Alaska, without

explanation, simply adopted the holding in *Edmonds, supra.* However, all of the foregoing state courts recognize that if an obligor has assets available to meet a support obligation, a different conclusion might be reached. *Leasure, supra* (no liability absent an affirmative showing of assets); *Nab, supra,* at 1240 (remanded to determine assets of obligor); *Pierce, supra,* at 293 (assets may be applied to meet child support obligation of incarcerated parent); *Foster, supra,* at 869 (not liable absent an affirmative showing of assets); *Clemens, supra* (remanded to determine if incarcerated obligor had available assets); *Edmonds, supra,* at 633 (no liability absent an affirmative showing of assets).

State courts which have held that incarceration is not a change of circumstances warranting modification or suspension of child support have emphasized the willful nature of the obligor's criminal conduct which caused the incarceration. *Harper, supra,* at 1183 (incarceration is a foreseeable result of criminal activity); *Proctor, supra,* at 1391 (one who stops working as the result of punishment for an intentional criminal act retains the ability to earn and a duty to support his child or children); *Parker, supra,* at 65 (the obligor cannot be excused from his child support obligation because of a willful act that resulted in imprisonment); *Noddin, supra,* at 1053 (modification denied if the change in condition is due to fault, voluntary wastage or dissipation of one's talents and assets); *Ohler, supra,* at 618 (incarceration is a foreseeable result of criminal activity).

In our view, the reasoning in those cases which find that incarceration is the result of a voluntary willful act of an obligor are persuasive. The focus of the *Peters* court in rendering its decision centered solely on the obligor and disregarded the duty of support a parent owes to his child. While appellant is incarcerated, the needs of his children are not diminished. Appellee, perhaps with the aid of a governmental entity, must care for the children of both parties as best she can in order to fulfill those needs. The only person to benefit if support is suspended would be appellant. The child support system was not established for this purpose but was created to meet the ongoing needs of the children of divorced parents. Thus, the focus should be, as always, on the child and his or her best interest. Any arrearages which accrue during appellant's incarceration can be paid after his release by way of a supplement to the original order. We agree with the dissent in *Peters* in determining that a possible finding of contempt is unlikely while appellant is incarcerated.

Quite simply, the *Peters* majority would treat a felon different than it would a parent who is voluntarily unemployed and accumulates arrearages due to that voluntary unemployment. The current trend in the courts of Ohio is to refuse to modify or terminate a child support obligation of one, who through his own volition, became unemployed or underemployed thereby failing in his duty to support a minor child. See *Boltz v. Boltz* (1986), 31 Ohio App. 3d 214; *Haynie v. Haynie* (1984), 19 Ohio App. 3d 288. With the adoption of the child support guideline, C.P. Sup. R. 75, the main consideration is not upon the obligor's current inability to pay, but, rather, is a consideration of the obligor's long range capacity to earn money. Any voluntariness in diminished earning capacity has increasingly become an impediment to modification. See, *e.g., Boltz, supra; Haynie, supra.* Therefore, appellant could and should be treated as any other noncustodial parent liable for any money owed on his child support obligation. Appellant's inability to pay arose from circumstances which he could have reasonably anticipated. There are no guaranties of probation or other forms of disposition when convicted of a criminal offense. It is not "state action" which reduced his income, but his own willful acts. Thus, we find that incarceration, standing alone, does not warrant a finding of change of circumstances. Determining whether such would be a change of circumstances is a matter within the sound discretion of the trial court as based upon the facts of each case. Here, the court had only the fact of incarceration as a result of a criminal offense before it. Therefore, it did not abuse its discretion in finding that it did not rise to a level of change of circumstances warranting a consideration of the relevant factors. Accordingly, appellant's first and second assignments of error are found not well-taken.

Appellant's third assignment of error asserts that the trial court's failure to modify or suspend his child support obligation vio-

lates the Eighth Amendment of the Constitution of the United States and the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution.

Appellant's support obligation is not a "fine." It is a duty separate and apart from any punishment he has received as a result of his criminal activities. Appellant argues, without any support in the record, that his children are now receiving support from a public agency and that his payment of the child support obligation will be used to reimburse that agency rather than be used for the benefit of his children. This argument ignores his children's continued need for support. It would be inequitable to have a support obligation discharged by society when the obligor has knowingly engaged in criminal acts at his own peril and has proven himself otherwise capable, as in this case, of providing the needed support for his children. This is not cruel and unusual punishment. Nor does it violate the Equal Protection Clause of the Fourteenth Amendment. The accrual of a child support obligation while incarcerated as a result of a voluntary act is no more discriminatory than imposing that same obligation on one who is voluntarily unemployed. No fundamental right is affected, nor is a suspect class created by the imposition of this obligation. The obligation is rationally related to the state's legitimate interest to ensure that children will receive the support to which they are entitled. Accordingly, appellant's third assignment of error is found not well-taken.

On consideration whereof, this court finds that substantial justice was done the party complaining, and the judgment of the Erie County Court of Common Pleas is affirmed. Court costs of this appeal are assessed against appellant.

This cause is certified to the Supreme Court of Ohio as being in conflict with *Peters, supra,* on the issue of whether, upon a motion to modify child support, incarceration as a result of a criminal offense is sufficient to warrant a finding of change of circumstances.

HANDWORK, P.J., GLASSER, J., and RESNICK, J., concur.