WOLOCH, Appellant,

v.

FOSTER, Appellee.

[Cite as *Woloch v. Foster* (1994), 98 Ohio App.3d 806.]

Court of Appeals of Ohio,
Miami County.

No. 94–Ca–8.

Decided Nov. 23, 1994.

808

[redacted]

*Mary Katherine Huffman,* for appellant.

*Jose M. Lopez,* for appellee.

GRADY, Presiding Judge.

This is an appeal from a judgment of the trial court, which found David Patrick Woloch in contempt of the prior orders of the court that had been entered in a decree of dissolution of marriage.

The decree of dissolution was entered in January 1989. It incorporated a separation agreement, which granted custody of the two minor children of the

parties to Susan Woloch, now Foster. David Woloch was ordered to pay child support, to maintain medical and dental insurance for the benefit of the children, and to pay any excess medical expenses not covered by insurance. David Woloch was also ordered to pay Susan Woloch one half of his pretax savings plan and profit sharing plan, as it was valued as of September 19, 1987.

Subsequently, David Woloch asked the court to modify his child support and insurance obligations and to allow him the tax exemption for the children. Susan Woloch countered, asking for an increase in child support and asking that David be found in contempt of the court's orders. She also asked that he be enjoined from spending any part of her share of the savings plans, which he had not yet transferred to her.

The motions were heard by a referee. The evidence showed that David had quit his job with Chemlawn, his employer at the time of the dissolution, to start his own lawn care business, with a partner. This produced a decrease in his weekly income from $460 to $180 and resulted in a loss of his health care benefits.

David testified that he had quit Chemlawn because his share of the monthly health insurance premium was to increase from $48 to $128, and because he had achieved his greatest career position with Chemlawn.

At the time of the hearing, David had not paid Susan her share of the savings plans, which amounted to $4,775.67, and was in arrears in payment of his share of medical and school expenses for the children.

The referee recommended that David be ordered to pay Susan the monies due her from the savings plans, plus interest from January 1, 1989. The total amount thus due was $7,163.50. The referee also recommended that David be found in contempt of court for failure to pay medical and school expenses, which amounted to $1,179.80. The referee also recommended that David's job change be found to be a voluntary termination.

Objections were filed. On January 14, 1994, the court overruled the objections and adopted the referee's report and recommendations as its own order.

David Woloch filed a timely notice of appeal from the trial court's order and now presents six assignments of error, which are discussed below.

I

"A trial court errs in failing to adopt the local standard order of health care needs for dependent children when a motion to modify support is properly before the court."

The Court of Common Pleas of Miami County has adopted a Standard Order of Health Care Needs for Dependent Children. The standard order

requires the obligor and obligee to share equally the cost of any uninsured extraordinary medical expenses. When applied, the standard order meets the mandate of R.C. 3113.217(C)(8), which requires the court to make an order covering such expenses in the form of deductibles and copayments.

■ Courts of common pleas are authorized by Section 5(B), Article IV, Ohio Constitution, to adopt local rules governing practice and procedure. Those rules may not be inconsistent with rules promulgated by the Supreme Court. *Id.* Neither may they determine substantive rights.

An order that divides the cost of medical expenses between an obligor and an obligee determines substantive rights. It is not procedural, and is not a local rule contemplated by Section 5(B), Article IV. Therefore, the common pleas court did not err in varying from its standard order here, and the court's order represents a reasonable exercise of the court's discretionary powers.

The foregoing statement is not intended to nullify the Standard Order of Health Care Needs for Dependent Children. The court may maintain such a directive, as an advisory statement. Indeed, the Child Support Guidelines issued by the Supreme Court some years ago were no more than that. See former C.P.Sup.R. 75, 33 Ohio Official Reports xxvi. Now, however, they have the force of law of a legislative mandate. See R.C. 3113.215.

The first assignment of error is overruled.

## II

"A trial court errs in failing to compute child support pursuant to Ohio Revised Code Section 3113.215, upon a proper motion for modification of support having been filed."

Whether a prior order for child support should be modified is within the sound discretion of the trial court, and its decision in that regard may be reversed on appeal only for an abuse of that discretion. An abuse of discretion does not exist unless the record demonstrates that the court's attitude in making its decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 5 OBR 481, 450 N.E.2d 1140.

■ Modification of a child support order involves a two-step process. First, the trial court must decide whether the movant has demonstrated a substantial change of circumstances. Second, if a substantial change of circumstances is demonstrated, the court should make a modification appropriate to the factors set out in R.C. 3109.05(A) which are relevant to the case. *Cole v. Cole* (1990), 70 Ohio App.3d 188, 590 N.E.2d 862.

■ The discretion exercised by the trial court is constrained by R.C. 3113.215(B)(4), which governs modification. When a motion for modification alleges a material change in the child support obligor's income, the court is required by the statute to calculate the support that should be paid, using the "worksheet" and "Basic Child Support Schedule" set out in R.C. 3113.215. If the new amount deviates from the existing order by ten percent or more, a substantial change of circumstances has been demonstrated. The deviation demonstrated may result from an increase in the obligor's income or a decrease in the obligor's income. However, a decrease resulting from the obligor's voluntary unemployment or underemployment may be rejected by the court as a substantial change of circumstances that would support modification.

■ The fact that the obligor's income has been reduced as a result of his or her voluntary choice does not necessarily demonstrate voluntary underemployment. The test is not only whether the change was voluntary, but also whether it was made with due regard to the obligor's income-producing abilities and her or his duty to provide for the continuing needs of the child or children concerned.

■ There was sufficient evidence that, although David Woloch believed that he would be better off starting his own company, he knew full well that his earnings would suffer during this transition. He was also aware that his dental benefits would be sacrificed. On cross-examination the following exchange took place between David Woloch and counsel for Susan Woloch:

"Q: So you expected not to take a decrease in income when you left?

"A: Chemlawn?

"Q: Yes.

"A: Oh, I knew I was going to."

David Woloch's decision to quit Chemlawn and to start his own company was a decision he had a right to make. However, in making that choice he was not free to disregard its impact on his ability to provide for his two minor children. The trial court could reasonably find that he had failed to give adequate weight to his duty to support his children, and on that basis find that he had failed to demonstrate a substantial change of circumstances necessary for modification of child support.

Because the court found that no substantial change of circumstances had occurred, the court was not required to recompute the support that would have been payable had David's income change constituted a substantial change of circumstances.

Appellant's second assignment of error is overruled.

The third assignment of error states:

"A trial court errs and abuses its discretion, in awarding interest on profit sharing and pre-tax savings plans when the non-participant has failed to exercise her right to obtain her share of those benefits and when there is no evidence that interest had accrued on those funds."

■ David Woloch's primary argument here is that because he had no affirmative duty to pay these funds to his former spouse directly, and because no evidence of accumulated interest was presented at the hearing, he should not be required to now pay interest to her. We do not agree.

R.C. 1343.03 states that "when money becomes due and payable upon * * * any settlement between parties, * * * and upon all judgments, decrees, and orders of any judicial tribunal for the payment of money * * *, the creditor is entitled to interest at the rate of ten percent per annum."

■ An order distributing marital assets from one party to another has the force of a money judgment, and the recipient is entitled to interest on any amount due and owing under the order but unpaid.

Susan's share of the pretax savings profit sharing plans was due and payable "as soon as possible" after the judgment entry of dissolution on January 9, 1989. The trial court found that David had not assisted in paying over these funds to his former wife, and apparently had no intention of doing so. This court cannot say that the trial court abused its discretion in awarding interest on the funds that were due and payable to Susan "as soon as possible" four years ago, but as yet unpaid.

■ On the motion of Susan Foster, the referee on June 2, 1993, signed a restraining order preventing David Woloch from spending or disbursing these funds. This restraint was not removed until entry of the court's own order on January 14, 1994. Because David was prevented from paying these funds to his former wife during the interim, the interest will be tolled for that period. The case will be remanded for modification of the court's order in that respect.

The third assignment of error is overruled in part and sustained in part.

The fourth assignment of error states:

"A trial court errs in finding an obligor in contempt for failure to pay uninsured medical expenses when the obligor is making regular payments on these expenses and school expenses when there is no evidence of school expenses."

■ As the referee stated, "proof of purposeful, willing or intentional violation of a court order is not a prerequisite to a finding of contempt." *Pugh v. Pugh* (1984), 15 Ohio St.3d 136, 140, 15 OBR 285, 287–288, 472 N.E.2d 1085, 1086.

"Civil * * * contempt is a sanction to enforce compliance with an order of the court or to compensate for losses or damages sustained by noncompliance." *Id.*

The testimony was undisputed that David Woloch was not current on all of the medical payments for which he was obligated. Additionally, he had failed to maintain dental insurance for his two boys. These findings are more than adequate for this court to find that the trial court did not err in finding him in contempt of court for failure to abide by the separation agreement as incorporated in the judgment decree entered in 1989.

The fourth assignment of error is overruled.

The fifth assignment of error states:

"A trial court errs in awarding attorney fees in the absence of testimony as to the amount of fees incurred."

R.C. 3105.18(H) states:

"In divorce or legal separation proceedings, the court may award reasonable attorney's fees to either party at any stage of the proceedings, including but not limited to, any appeal, [and] any proceeding arising from a motion to modify a prior order or decree * * *."

Also, "where the amount of the attorney's time and work is evident to the trier of fact, an award of attorney fees, even in the absence of specific evidence to support the amount, is not an abuse of discretion." *Kreger v. Kreger* (Dec. 11, 1991), Lorain App. No. 91CA005073, unreported, 1991 WL 262883.

Because the attorney fees here were nominal in amount, no evidence of the amount of attorney fees actually incurred, or the reasonableness of that charge, is necessary. The fifth assignment of error is overruled.

The sixth assignment of error states:

"A trial court errs in failing to critically review a report and recommendation of a referee, and errs in rubber-stamping such a report and recommendation."

Appellant argues that the trial court failed to independently review the report of the referee before the court adopted the recommendation as its own order. However, the appellant points to nothing in the record which indicates why this is so.

App.R. 12(A)(2) states that a court of appeals "may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based."

The record shows that the trial court reviewed the findings of the referee, and the appellant has shown this court nothing in the record which would indicate otherwise.

Accordingly, this assignment of error is overruled.

## CONCLUSION

The judgment appealed from is reversed in part and is remanded for entry of a modified order that reflects the time period for the accrual of interest on the pretax savings and profit sharing plans as announced by this court. In all other respects the judgment will be affirmed.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

BROGAN and WOLFF, JJ., concur.