Plaintiff-appellant cross-appellee Alyson Warner Barnard and defendant-appellee cross-appellant Herbert R. Kuppin, Jr., were divorced pursuant to decree on February 10, 1988. A separation agreement executed by the parties on December 23, 1987, was incorporated into the decree. Barnard was given custody of the parties' two children, Herbert R. Kuppin, III, born August 4, 1977, and Warner Tyler Kuppin, born February 7, 1979. Kuppin was required to pay child support in the amount of $2000 per month per child until each child reached age nineteen. Kuppin was also required to pay Barnard alimony of $3250 per month until her death or remarriage. In the event of Barnard's remarriage, the alimony payments were to terminate and Kuppin was to begin paying monthly "gifts" of $1500 to Barnard "on behalf of the children as family support" until each child reached age nineteen. Barnard remarried, whereupon Kuppin began making the monthly "gift" payment. The gift payment was reduced to $750 per month on August 4, 1996, the oldest child's nineteenth birthday.
Pursuant to the separation agreement, Kuppin agreed to "finance any and all degree oriented education that the children may wish to undertake, through graduate school, including all incidental expenses incurred in connection with such education." In addition, Kuppin agreed "to be responsible for all costs attributed to summer camps and to provide car insurance upon any car they may own until they each reach the age of twenty-three." Kuppin was also obligated to pay one-half of the cost of private high-school tuition for the children.
The separation agreement obligated Kuppin to maintain Barnard and the children as beneficiaries of a life-insurance trust, dated May 5, 1986. The insurance trust provides approximately $3,500,000 in benefits, at a cost of $2695.85 per month in premiums.
At the time of the parties' divorce, Kuppin was the sole owner of the Kuppin Insurance Agency. The child-support worksheet indicates that Kuppin's annual income was $300,000. Barnard was unemployed, but an annual income of $12,000 was imputed to her. Kuppin, through his insurance business, earned $525,704 in 1993, $501,608 in 1994, and had already earned $412,074 in 1995, when Kuppin sold his business.
On December 1, 1995, Kuppin sold his insurance business to Hauser Insurance, Inc., for $850,000 pursuant to an asset-purchase agreement. The asset-purchase agreement provided for the transfer of the customer list and fixed assets of the Kuppin Insurance Agency to Hauser Insurance, Inc., but the agreement did not provide for the assumption by Hauser Insurance, Inc., of Kuppin Insurance Agency's existing debts. The new agency became known as Hauser-Kuppin Insurance, but Kuppin had no ownership interest in the new company. Kuppin was to receive $650,000 at closing and the remaining $200,000 on April 1, 1996. Kuppin did not employ the services of an appraiser or a broker in deciding on the $850,000 sale price for his insurance business.
Kuppin executed an employment agreement and a non-competition agreement, each with a term of four years, ending on November 30, 1999. Under the non-competition agreement, Kuppin was to receive $200,000 on January 31, 1996, and $25,000 on December 1, 1999. Kuppin's employment agreement provided for an annual salary of $450,000, plus a commission of twenty percent on all new life-insurance policies sold by Kuppin. Pursuant to the agreement, if commissions on both renewals and the new insurance policies sold by Kuppin failed to equal or exceed $1,150,000 during the first year, or $1,350,000 during the second year, the payments to Kuppin would be reduced by two times the difference between $1,150,000 and the total commissions generated by Kuppin during that period, up to $250,000 per year.
Kuppin was paid $650,000, a portion of the sale price of his business, in December 1995. $493,000 of that amount was paid directly to Fifth-Third Bank by Hauser Insurance, Inc., to release a security interest the bank held in Kuppin's business and personal assets. In early 1996, Mark Hauser, president of Hauser-Kuppin Insurance, and Thomas Gregory, chief financial officer of Hauser-Kuppin Insurance, became aware that creditors of Kuppin Insurance Agency were calling Hauser-Kuppin Insurance regarding unpaid debts. Following an examination of the books of Kuppin Insurance Agency and Goldencare, a Subchapter S corporation owned by Kuppin and Andrew Green, it was discovered that the books did not accurately reflect the financial condition of Kuppin's businesses. Kuppin was requested to prepare a list of his personal liabilities, as well as those of Kuppin Insurance Agency and Goldencare. Kuppin listed the total indebtedness as $350,000. It was later discovered that Kuppin's personal and business debts totaled approximately $1.7 million.
Hauser Insurance, Inc., considered setting aside the asset-purchase agreement, but determined that it would be too damaging to its reputation in the insurance business. Instead, it was decided that Hauser-Kuppin Insurance would assist Kuppin in resolving his indebtedness. At that point, Thomas Gregory assumed control over Kuppin's finances. A series of transactions to reduce Kuppin's debt took place. Kuppin sold his interest in Goldencare along with its trademark, and his interest in another partnership. He also sold real property and a condominium, the proceeds of which went to satisfy Kuppin's liabilities. In addition, in exchange for a salary advance of $600,000, Kuppin agreed to reduce his annual salary from $400,000 to $150,000. Kuppin also waived payment of the additional $25,000 owed to him pursuant to the non-competition agreement. Kuppin did not personally receive any of the proceeds of the transactions; all amounts were used to pay Kuppin's outstanding debts. As a result of the transactions to reduce his debt, Kuppin has incurred substantial tax liability.
On October 9, 1996, Barnard filed a motion for contempt, alleging that Kuppin had failed to pay (1) one-half of the younger son's high-school tuition; (2) one-half of the younger son's summer-camp expenses; (3) the older son's college tuition; (4) one-half of the uninsured medical expenses; (5) premiums to maintain the life-insurance trust; and (6) monthly "gift" payments required by the separation agreement. Kuppin filed a motion to modify the life-insurance provisions and child support, alleging a change in circumstances due to his financial situation. Following a hearing, the magistrate issued a decision to which both parties objected. After entertaining oral argument, the trial court issued a decision, accompanied by findings of fact and conclusions of law. Both parties have appealed. Barnard has raised six assignments of error, and Kuppin has raised three assignments of error for our review.
Barnard's first assignment of error alleges that the trial court erred in granting Kuppin's motion to modify his child support and other obligations. Barnard initially argues that the trial court erred in granting Kuppin's motion to modify his child-support obligation.
The modification of a child-support order involves a two-step process. See Cheek v. Cheek (1982), 2 Ohio App.3d 86,440 N.E.2d 831. First, the trial court must determine whether the movant has demonstrated a change in circumstances. If a change in circumstances is shown, the trial court may then make an appropriate modification. Id.; see Cole v. Cole (1990),70 Ohio App.3d 188, 590 N.E.2d 862. The trial court's judgment will not be reversed on either of these steps absent an abuse of discretion. See Brockmeier v. Brockmeier (1993), 91 Ohio App.3d 689,633 N.E.2d 584.
A voluntary reduction in earnings does not constitute a change of circumstances warranting a modification of child support. See Brockmeier v. Brockmeier, supra.
 The current trend in the courts of Ohio is to refuse to modify or terminate a child support obligation of one, who through his own volition, became unemployed or underemployed thereby failing in his duty to support a minor child.
Cole v. Cole, supra.
A parent's subjective motivations for the unemployment or underemployment is not determinative of whether the parent is voluntarily unemployed or underemployed for purposes of child support. See Rock v. Cabral (1993), 67 Ohio St.3d 108,616 N.E.2d 218. The question of whether a parent is voluntarily unemployed or underemployed must be decided based upon the facts and circumstances of each case. Id.
 The fact that the obligor's income has been reduced as a result of his or her voluntary choice does not necessarily demonstrate voluntary underemployment. The test is not only whether the change was voluntary, but also whether it was made with due regard to the obligor's income-producing abilities and her or his duty to provide for the continuing needs of the child or children.
Woloch v. Foster (1994), 98 Ohio App.3d 806, 649 N.E.2d 918.
In Woloch, the obligor-father quit his job with Chemlawn to start his own lawn-care business with a partner, resulting in a decrease in earnings. The Second Appellate District held that the trial court did not err in holding that no change of circumstances necessary for a modification of child support had occurred. The appellate court noted that Woloch's decision to leave his employment at Chemlawn was a choice he had a right to make; but he was not free to do so without considering its impact on his ability to support his children. The trial court could have reasonably found that Woloch had not demonstrated a change of circumstances because he had failed to give adequate weight to his duty to support his children.
In Roski v. Roski (Mar. 26, 1992), Cuyahoga App. No. 62370, unreported, the Eighth Appellate District held that the trial court did not err in imputing income to a practicing neurosurgeon who had sold his interest in a profitable spine clinic to "pay off debts, invest in funds and make certain donations." The appellate court stated that a "voluntary act which limits earnings may not be utilized as a means to escape the responsibility of providing child support." Id.
The Eleventh Appellate District held in Slaby v. Slaby (Nov. 30, 1990), Ashtabula App. No. 89-A-1473, unreported, that the trial court did not err in holding that no change in circumstances had occurred where the obligor-father voluntarily left his employment at Lincoln Electric and began working full time in a chimney-sweep business.
In Kissel v. Kissel (Dec. 1, 1986), Butler App. No. CA86-03-043, unreported, the Twelfth Appellate District held that an obligor-father had not shown a change in circumstances where he had voluntarily resigned his pastorate, noting that a voluntarily induced inability to pay support does not constitute a change in circumstances.
The Eighth Appellate District held in Haynie v. Haynie
(1984), 19 Ohio App.3d 288, 484 N.E.2d 750, that where a physician-obligor, who had been earning a large salary as an emergency-room doctor, voluntarily discontinued his employment in order to open a medical partnership and suffered a reduction in income, the physician failed to prove a change in circumstances appropriate for a reduction in child support.
The evidence in the case sub judice shows that Kuppin's reduction in income was voluntary. His "change of circumstances" was brought about by his own actions and without any legal compulsion. His creditors were not threatening suit. The evidence does not demonstrate that Kuppin sold his business in order to reduce his debt. In fact, Kuppin testified that when he sold his business he did not know the extent of his debt. After selling his business, Kuppin relinquished control over the funds he received, allowing Hauser-Kuppin Insurance to apply the funds to his debt as it saw fit. Kuppin liquidated his assets, accumulating over $2.1 million, which Hauser-Kuppin Insurance used to pay creditors at its own discretion.
There is no evidence that, in undertaking the sale of the business and the transactions leading to the reduction of his personal and business debt, either Kuppin or Hauser-Kuppin Insurance considered Kuppin's obligations to his children. All the transactions occurred without due regard for the consequences to Kuppin's ability to support his children.
Under these circumstances, we hold that the trial court erred in granting Kuppin's motion to modify his child support because Kuppin failed to show the required change in circumstances. Kuppin's voluntarily induced reduction in income and the resulting inability to make his child-support payments do not constitute the change in circumstances required for a modification of child support.
In addition, we note that the trial court did not complete and make a part of the record the child-support computation worksheet required by R.C. 3113.215. A child-support worksheet must be completed and included in the record for the order or modification of support to be made. See Marker v. Grimm (1992),65 Ohio St.3d 139, 601 N.E.2d 496. The failure to do so constitutes reversible error. Id.
Barnard also alleges under the first assignment of error that the trial court erred in permitting Kuppin to substitute an insurance policy for one owned by the life-insurance trust. Kuppin sought permission to substitute a certain policy of insurance for one of the insurance policies owned by the life-insurance trust. The substitution would have saved Kuppin approximately $10,000 in premiums annually. The trustee, Barnard's attorney, refused to permit the substitution because the new policy contained a two-year suicide clause. The trial court ordered that the substitution be allowed. Barnard argues that the insurance trust was allocated to her as part of the division of property and that, therefore, the trial court was without jurisdiction to order a modification of the insurance trust.
Following a dissolution of marriage, the trial court does not retain jurisdiction to modify a property settlement. See Wolfe v.Wolfe (1976), 46 Ohio St.2d 399, 350 N.E.2d 413; Linehan v.Linehan (1986), 34 Ohio App.3d 124, 517 N.E.2d 967. A review of the record reveals that the insurance trust was allocated to Barnard as part of the division of property. The trust was in existence prior to the parties' divorce. The insurance trust was not listed in the separation agreement under the headings of "child support" or "alimony and family support," but under a separate heading of "insurance." The trust is not maintained as support or to secure payment of support.
We hold that the insurance trust was allocated to Barnard as part of the division of property, and that, therefore, the trial court had no jurisdiction to modify it. The trial court erred in ordering that Kuppin be permitted to substitute for the insurance policy owned by the trust.
Barnard additionally alleges that the trial court erred in granting Kuppin's motion to modify payments defined by the separation agreement as "gifts." We agree. If the "gift" payments were in the nature of a division of property, the trial court had no jurisdiction to modify them. See Wolfe v. Wolfe,supra; Linehan v. Linehan, supra. If the gift payments were in the nature of support, Kuppin did not show the "change in circumstances" required for a modification of support.
Barnard also alleges under the first assignment of error that the trial court erred in granting motions to modify Kuppin's obligation to pay the college expenses for each of his children. A review of the record shows that the trial court did not grant motions to modify Kuppin's obligation to pay his children's college expenses.
The first assignment of error is sustained to the extent that it challenges the modification of the child-support obligation, provisions of the life insurance trust and "gift" payments. The assignment of error is overruled in all other respects.
Barnard's second and fifth assignments of error allege that the trial court erred in failing to hold Kuppin in contempt for his failure to pay the monthly "gifts" required by the separation agreement and the college expenses for the oldest child. The movant in a contempt proceeding must establish by clear and convincing evidence that the obligor is in contempt. See Pugh v.Pugh (1984), 15 Ohio St.3d 136, 472 N.E.2d 1085; Wood v. Wood
(Apr. 23, 1997), Hamilton App, No. C-960516, unreported. The burden then shifts to the obligor to establish his inability to pay. Id.; see Linde v. Linde (Oct. 30, 1998), Hamilton App. No. C-970414, unreported. It is not a prerequisite to a finding of contempt that the violation be purposeful, willing or intentional. See Pugh v. Pugh, supra; Brockmeier v.Brockmeier, supra. Where a change in circumstances is voluntary, a finding of contempt may be proper. See Brockmeier v.Brockmeier, supra.
The trial court's refusal to hold Kuppin in contempt was based upon its determination that Kuppin's reduction in income and his resulting inability to make the required payments was involuntary. We have held that the reduction in Kuppin's income and the resulting changes in his financial situation were voluntary. In light of our holding, the second and third assignments of error are sustained to the extent that the cause must be remanded to the trial court for a redetermination of the issue of contempt.
Barnard's third assignment of error, alleging that the trial court erred in failing to hold Kuppin in contempt for failure to pay life-insurance premiums, is overruled. The evidence showed that Kuppin had made the required payments for life-insurance premiums.
Barnard's fourth assignment of error, which alleges that the trial court erred in failing to hold Kuppin in contempt for failure to pay the expenses for the Colorado Outward Bound program, is overruled. No evidence was presented regarding the expense for the Outward Bound program. Barnard presented no documentation, no bill and no testimony regarding this expense.
Barnard's sixth assignment of error, alleging that the trial court erred in holding that Kuppin had no obligation to pay any uninsured medical expenses once the children were emancipated, is overruled. The parties signed an agreed order, entered by the court on June 8, 1994, which stated in part:
 [Kuppin] shall continue to provide health insurance for the parties' minor children until they are 23. [Barnard] shall pay the first $100.00 per child per year towards uninsured medical expenses and all additional uninsured medical expenses shall be paid equally by the parties.
The agreed order does not expressly require Kuppin to pay one-half of the uninsured medical expenses after the children are emancipated. The parties disagreed over the interpretation of the order regarding Kuppin's obligation to pay for one-half of the uninsured medical expenses after the children were emancipated.
In enforcing the order, the trial court was required to construe its terms to effectuate the intent of the parties. SeeForstner v. Forstner (1990), 68 Ohio App.3d 367, 588 N.E.2d 285. A trial court is afforded broad discretion in clarifying the terms of such an order and can resolve a dispute by considering the intent of the parties and the equities involved. See Rohrbacherv. Rohrbacher (1992), 83 Ohio App.3d 569, 615 N.E.2d 338; In reDissolution of the Marriage of Seders (1987), 42 Ohio App.3d 155,536 N.E.2d 1190.
Although the trial court's findings of fact on this issue are confusing, its conclusions of law clearly state that Kuppin had no obligation to pay for uninsured medical expenses once the children were emancipated. We hold that the trial court's interpretation of the agreed order, including its finding that Kuppin was required to maintain health insurance for his children until they reached the age of twenty-three, but that he was not obligated to pay one-half of the uninsured medical expenses after they were emancipated, is supported by the evidence and did not constitute an abuse of discretion. See Rock v. Cabral, supra.
Kuppin raises three assignments of error in his cross-appeal, which allege that the trial court erred in failing (1) to find that he could not pay the college expenses for the older son on the basis of impossibility of performance; (2) to modify his obligation to pay the college expenses for the younger son on the basis of impossibility of performance; and (3) to deviate from the child-support guidelines based upon the monthly "gift" payments.
Following a review of the record, we hold that the trial court's determinations are supported by the evidence and did not constitute an abuse of discretion. Id. Kuppin's assignments of error are overruled.
The judgment of the trial court is affirmed in part and reversed in part, and the cause is remanded for further proceedings consistent with law and this decision.
Judgment affirmed in part and reversed in part, and causeremanded.
 Doan, P.J., Hildebrandt and Winkler, JJ.
 Please Note:
The court has placed of record its own entry in this case on the date of the release of this Decision.