[Cite as *L.B. v. T.B.*, 2011-Ohio-3418.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

| | | |
|---|---|---|
| L.B. | : | |
| Plaintiff-Appellee | : | C.A. CASE NO. 24441 |
| v. | : | T.C. NO.   02DM924 |
| T.B. | : | (Civil appeal from Common Pleas Court, Domestic Relations) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . .

**O P I N I O N**

Rendered on the ___8th___ day of ___July___, 2011.

. . . . . . . . . .

KEITH R. KEARNEY, Atty. Reg. No. 0003191, 40 N. Main Street, Suite 2160, Dayton, Ohio 45423
        Attorney for Plaintiff-Appellee

T.B., Defendant-Appellant

. . . . . . . . . .

FROELICH, J.

{¶ 1} Plaintiff-appellant T.B. [1] (Husband) appeals from a judgment of the Montgomery County Court of Common Pleas, Domestic Relations Division, reducing his child support order. For the following reasons, the judgment of the trial court will be

---

[1] Pursuant to our order of April 22, 2011, the parties are referred to by initials only.

Affirmed.

I

{¶ 2}  The parties were married in 1996 and have one child.  The marriage was terminated by a final decree of dissolution in 2003.  Custody was awarded to  L.B. (Wife), and pursuant to an agreed entry filed several months later, child support was set at $723/month.  Both parties were practicing attorneys; Wife earned $82,000 a year, and Husband earned $60,000 a year.

{¶ 3}  In 2005, Husband was fired from his job, as a result of an ongoing criminal investigation.  However, he was able to find another attorney position earning $90,000 a year.  Husband was charged with two felony offenses in 2006, at which time he was forced to resign.  Initially, his bond conditions prevented him from working.  When those conditions were amended, Husband found employment earning about $16,000 a year at United Dairy Farmers.  Husband requested that the Child Support Enforcement Agency (CSEA) administratively adjust his child support obligation.  In March of 2007, the CSEA filed a motion to modify, noting that the parties' incomes exceeded $150,000, and pursuant to R.C. 3119.04(B), modification of a previous court order must be done by the court.  This motion was dismissed by the court in May of 2008.  Husband eventually pled guilty to one count of possession of child pornography and was sentenced to four years in prison; he is scheduled for release in October, 2012.  In October, 2009, the Ohio Supreme Court suspended Husband from the practice of law.

{¶ 4}  In June of 2009, during his incarceration, Husband again requested an administrative modification.  On December 4, 2009, the CSEA again filed a motion for

modification with the court because the parties' income "likely exceeds $150,000." The parties were ordered to file exhibits and written arguments in support of their positions, in lieu of an evidentiary hearing. The record indicates that in his last position as an attorney prior to his incarceration, Husband was earning $90,000/year, while Wife was earning $141,000/year. On October 6, 2010, the magistrate ordered that, effective December 9, 2009, Husband's child support obligation would be reduced to $494/month, plus $75/month to be paid on the accrued arrearage. Husband filed objections to the decision, and the trial court overruled those objections. Husband appeals from the trial court's judgment.

II

{¶ 5} The same standard of review applies to all three assignments of error. "A trial court's decision regarding a child support obligation will not be reversed on appeal absent an abuse of discretion." *Snyder v. Snyder,* Cuyahoga App. No. 95421, 2011-Ohio-1372, ¶42, citing *Pauly v. Pauly,* 80 Ohio St.3d 386, 390, 1997-Ohio-105, in turn citing *Booth v. Booth* (1989), 44 Ohio St.3d 142, 144. "An abuse of discretion is more than an error of law, it connotes that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217 * * *. Moreover, as long as the decision of the trial court is supported by some competent, credible evidence, the reviewing court will not disturb it. *Masitto v. Masitto* (1986), 22 Ohio St.3d 63 * * *." Id.

III

{¶ 6} Husband's First Assignment of Error:

{¶ 7} "THE TRIAL COURT ERRED WHEN IT FOUND THAT NO CHANGE OF CIRCUMSTANCES EXISTED THAT PERMITTED IT TO ADDRESS

MODIFICATION OF CHILD SUPPORT."

{¶ 8} Husband's Second Assignment of Error:

{¶ 9} "THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DETERMINED APPELLANT'S CHILD SUPPORT OBLIGATION WITHOUT UTILIZING THE FACTORS SET FORTH IN R.C. §3119.01(C)(11)."

{¶ 10} In his first assignment of error, Husband argues that the trial court erred in finding that there was no change of circumstances to warrant recalculation of his child support order. In his second assignment of error, Husband contends that the trial court erred in using his $90,000 income when recalculating the child support order.

{¶ 11} When a trial court makes or modifies an order for child support, the court is required to comply with Chapters 3119, 3121, 3123, and 3125 of the Ohio Revised Code. R.C. 3109.05(A)(3). Any modification of a child support order requires a two-step process. *Coffman v. Coffman* (June 28, 1995), Greene App. No. 94-CA-104, citing *Brockmeier v. Brockmeier* (1993), 91 Ohio App.3d 689, 692; *Cheek v. Cheek* (1982), 2 Ohio App.3d 86, 87. The court must first determine whether there has been a change in circumstances. Id., citing *Brockmeier,* supra; *Cheek,* supra; *Cole v. Cole* (1990), 70 Ohio App.3d 188. Pursuant to R.C. 3119.79, when either party requests a modification of a child support order based upon a change in income, the court must recalculate the amount of support using the statutory guidelines, schedules, and worksheets. Id. See, also, *Snyder v. Snyder,* Cuyahoga App. No. 95421, 2011-Ohio-1372, ¶43. "A recalculated amount that varies more than ten percent from the existing amount 'shall be considered by the court as a change of circumstance substantial enough to require a modification of the child support amount.' "

Id., quoting R.C. 3119.79(A). If there has been a change in circumstances, the court may modify the support order in accordance with the statutory factors and guidelines. Id., citing *Cole,* supra.

{¶ 12} As Husband concedes, "[i]ncarceration which results from voluntary criminal acts does not constitute a change in circumstances which justifies modification of a child support order." *Kreuzer v. Kreuzer* (May 4, 2001), Greene App. No. 00CA43, citing *Cole v. Cole* (1990), 70 Ohio App.3d 188; *Mannasmith v. Mannasmith* (July 26, 1988), Marion App. No. 9-90-44; *Richardson v. Ballard* (1996), 113 Ohio App.3d 552; *Williams v. Williams* (Sept. 24, 1992), Franklin App. No. 92AP-438. "'A parent cannot, by intentional conduct or mere irresponsibility, seek relief from this duty of support. Defendant, who by his own wrongful conduct placed himself in a position that he is no longer available for gainful employment, is not entitled to relief from his obligation to support his child. Incarceration was a foreseeable result of his criminal conduct and thus is deemed a voluntary act in and of itself.'" *Kreuzer,* supra, quoting *Williams,* supra.

{¶ 13} Husband apparently argues that, at least in his situation where there is no contention that he has any other income or assets, although mere incarceration is not a change of circumstances, that his resultant impecunious state is unquestionably a change of circumstances. It is true that the statute defines "change of circumstance" as including when the recalculated amount of support varies by more than ten percent from the existing amount and that if Husband's income were established at zero, there is a change of circumstances. R.C. 3119.79(A).

{¶ 14} To engage in such recalculation, the court must consider the "income" to the

parties, which is defined in R.C. 3119.01(C)(5) for a parent who is unemployed or underemployed as including "potential income." R.C. 3119.01(C)(5)(b). In turn, "potential income" is defined by R.C. 3119.01(C)(11) for a parent who is voluntarily unemployed or underemployed to include "imputed income that the court or agency determines the parent would have earned if fully employed as determined from the following criteria: (i) The parent's prior employment experience; (ii) The parent's education; (iii) The parent's physical and mental disabilities, if any; (iv) The availability of employment in the geographic area in which the parent resides; (v) The prevailing wage and salary levels in the geographic area in which the parent resides; (vi) The parent's special skills and training; (vii) Whether there is evidence that the parent has the ability to earn the imputed income; (viii) The age and special needs of the child for whom child support is being calculated under this section; (ix) The parent's increased earning capacity because of experience; (x) Any other relevant factor."

{¶ 15} Husband argues that his (vi) "special skills and training" are useless because he does not have a law license, and that there is no evidence (vii) that he "has the ability to earn the imputed income" since he is imprisoned and has no license. The superficial applicability of these criteria is belied by the fact that his current situation is totally attributable to his voluntary acts. How is this different than an attorney who decides to forego the pressures of practicing law, to surrender his license, and to retire to Walden Pond? There is no requirement that the purpose of the voluntary unemployment was to evade a support obligation. *Rock v. Cabral* (1993), 67 Ohio St.3d 108.[2] The statute

---

[2] There are certainly public policy considerations, but Ohio follows the "no justification" rule. See, e.g., Cammett,

implicitly recognizes the discretion given to the trial court by allowing it to consider "any other relevant factor." To say that his voluntary unemployment is not a change of circumstances, but that the loss of income necessarily ensuing from it is a change of circumstances, is a circular argument that attempts to lift itself by its own bootstraps.

{¶ 16} Both the magistrate and the trial court found that Husband's incarceration, which was a direct result of his voluntary criminal actions does not constitute a change in circumstances that would permit the modification of child support. Nevertheless, the magistrate found that "it is also evident that [Wife] has increased her income substantially, up to $141,000 in 2009." As a result of that increase, the magistrate recommended a reduction of child support. Although the trial court did not specifically state that the substantial increase in Wife's income constituted a change in circumstances, the trial court did, in fact, reduce the child support order by $229/month, using Wife's increased income in its calculations. Thus, in reducing the child support order after finding that Husband's incarceration did not constitute a change of circumstances, the trial court necessarily agreed with the magistrate's finding that the increase in Wife's income did constitute a change in circumstances.

{¶ 17} Husband argues that the trial court should not have used his income of $90,000 in its calculations. He maintains that, at most, the trial court should have attributed $16,000 in income to him, the amount that he was earning immediately prior to his incarceration. However, having found no change of circumstances regarding Husband, the

---

*Deadbeats, Deadbrokes, and Prisoners,* 18 Georgetown Journal on Poverty Law and Policy 127 (Spring 2011); Pearson, *Building Debt While Doing Time: Child Support and Incarceration,* 43 Judges Journal 5 (2004).

trial court properly exercised its discretion by using the last income attributable to Husband prior to his criminal acts, which resulted in the suspension of his law license and his subsequent incarceration.

{¶ 18} Because the purpose of child support is to protect children and to serve their best interest, "[c]hildren should not be made to suffer because of a parent's wrongdoing." *Kreuzer,* citing *Cole,* supra. The only person who would benefit from the trial court's using Husband's reduced income would be Husband, not his child. Therefore, we find no abuse of discretion in the use of Husband's $90,000 income.

{¶ 19} We recognize that while Husband is incarcerated, he will likely be unable to make his child support payments. An obligor generally cannot be held in contempt for failure to pay child support while incarcerated. *Rhodes v. Rhodes,* Belmont App. No. 00 BA 34, 2001-Ohio-3410, citing *Richardson v. Ballard* (1996), 113 Ohio App.3d 552. Furthermore, an inability to pay child support is an affirmative defense to a criminal non-support charge. R.C. 2919.21(D). Whether future modifications are appropriate and how arrearage payments should be established are not before us.

{¶ 20} Husband's first and second assignments of error are overruled.

IV

{¶ 21} Husband's Third Assignment of Error:

{¶ 22} "THE TRIAL COURT ERRED WHEN IT SET THE EFFECTIVE DATE OF APPELLANT'S NEW CHILD SUPPORT OBLIGATION AS DECEMBER 9, 2009 - THE DATE IN WHICH APPELLEE WAS SERVED WITH THE MOTION TO REDUCE SUPPORT."

{¶ 23} In his third assignment of error, Husband argues that the trial court should have ordered the new child support obligation to begin in the spring of 2009, when he started the administrative process seeking a reduction. Instead, the trial court ordered the new order to begin on December 9, 2009, which corresponded with Wife's being served with the motion to reduce child support. We conclude that the trial court did not abuse its discretion in ordering the reduction effective on December 9, 2009.

{¶ 24} Husband insists that the trial court effectively punished him for attempting to use the administrative process. On the other hand, Wife claims that because the parties' combined income is over $150,000, any change in child support could only have been considered by the court rather than through an administrative review, and, therefore, the trial court did not err in choosing the December 9, 2009 date. R.C. 3119.04(B) states that if the combined gross income of both parents is more than $150,000 per year, and there is a court-ordered child support order, the court shall determine the amount of the child support obligation, while the child support enforcement agency would have jurisdiction only with respect to an administrative child support order.

{¶ 25} There is nothing legally wrong with Husband's request to make the new child support order retroactive to his attempts to initiate an administrative review in June of 2009. Generally, an order to modify a child support order should relate back to the date of a party's motion. *Bockhorn v. Bockhorn,* Greene App. No. 2005-CA-145, 2006-Ohio-6226, ¶30, citing *State ex rel. Gilmore v. Minter* (Dec. 19, 1997), Montgomery App. No. 16462. However, it is within the trial court's discretion to use another date. Id. Husband is familiar with the law and previously requested an administrative modification which resulted

in the CSEA's having to file a motion to modify. Especially in a situation where the administrative agency did not have the authority to review the support order, we find no abuse of discretion with the trial court's decision to make the order effective on the date on which Wife was served with the court motion to reduce the child support order.

{¶ 26} Husband's third assignment of error is overruled.

V

{¶ 27} Husband's three assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . .

GRADY, P.J., concurs.

FAIN, J., concurring:

{¶ 28} Although it does not affect the outcome of this appeal, I take issue with the proposition that a trial court may, without abusing its discretion, commit an error of law.

{¶ 29} I have traced this offensive formulation – that abuse of discretion means more than an error of law – as far back as *Steiner v. Custer* (1940), 137 Ohio St. 448, 450, which, in turn, cites Black's Law Dictionary (2 Ed.), 11 as authority. The definition of "abuse of discretion" in Black's Law Dictionary, Eighth Edition (2004), at 11, offers no support for the offensive formulation:

{¶ 30} "1. An adjudicator's failure to exercise sound, reasonable, and legal decision-making. 2. An appellate court's standard for reviewing a decision that is asserted to be grossly unsound, unreasonable, illegal, or unsupported by the evidence."

{¶ 31} Interestingly, the definition of "abuse of discretion" in Black's Law

Dictionary, Fourth Edition (1968), which was the edition of Black's Law Dictionary extant when I was in law school, not only does not support the offensive formulation, it contradicts it:

{¶ 32} " 'Abuse of discretion' is synonymous with a failure to exercise a sound, reasonable, and legal discretion. * * * * . *It is a strict legal term indicating that appellate court is simply of opinion that there was a commission of an error of law in the circumstances.* * * * * . And it does not imply intentional wrong or bad faith, or misconduct, nor any reflection on the judge but means the clearly erroneous conclusion and judgment – one is that [sic] clearly against logic and effect of such facts as are presented in support of the application or against the reasonable and probable deductions to be drawn from the facts disclosed upon the hearing; an improvident exercise of discretion; *an error of law.* * * * * .

{¶ 33} "A discretion exercised to an end or purpose not justified by and clearly against reason and evidence. * * * * . Unreasonable departure from considered precedents and settled judicial custom, *constituting error of law.* * * * * . The term is commonly employed to justify an interference by a higher court with the exercise of discretionary power by a lower court and is said by some authorities to imply not merely error of judgment, but perversity of will, passion, prejudice, partiality, or moral delinquency. The exercise of an honest judgment, however erroneous it may appear to be, is not an abuse of discretion. * * * * . Where a court does not exercise a discretion in the sense of being discreet, circumspect, prudent, and exercising cautious judgment, it is an abuse of discretion. * * * * . Difference in judicial opinion is not synonymous with 'abuse of discretion' as respects setting aside

verdict as against evidence. * * * * ."   (Citations omitted; emphasis added.)

{¶ 34} I can only speculate that the origins of the offending formulation lay in an attempt to make the following point too succinctly:

{¶ 35} When a pure issue of law is involved in appellate review, the mere fact that the reviewing court would decide the issue differently is enough to find error.[3]   By contrast, where the issue on review has been confided to the discretion of the trial court, the mere fact that the reviewing court would have reached a different result is not enough, without more, to find error.

{¶ 36} I know, all too well, that the offending formulation can be found in a plethora of appellate opinions, including decisions of the Ohio Supreme Court.   But I am not aware of any Ohio appellate decisions in which it is declared, as part of the *holding,* that a trial court may, in the exercise of its discretion, commit an error of law.

{¶ 37} I will admit that, on numerous occasions, I have been too lazy to delete a quotation or paraphrase of the offending formulation from a staff attorney's draft.   I am confident, however, that in none of those opinions is it part of the *holding* that a trial court may, in the exercise of its discretion, commit an error of law.

{¶ 38} No court – not a trial court, not an appellate court, nor even a supreme court – has the authority, within its discretion, to commit an error of law.[4]

. . . . . . . . . .

---

[3]Of course, not all errors are reversible.   Some are harmless; others are not preserved for appellate review.

[4]This does not, of course, obviate the existence of frequent and lively disagreements between courts and individual judges as to what the law is.

Copies mailed to:

Keith R. Kearney
T.B., Defendant-Appellant
Hon. Timothy D. Wood