OPINION
Appellant, Linda Rice, appeals from the July 10, 2000 judgment entry of the Ashtabula County Court of Common Pleas awarding her interest in the amount of $9,015.19 as a result of appellee, Daniel Rice, delaying in transferring marital property to her.
The parties were divorced pursuant to a decree dated October 1, 1999 ("the divorce decree"). According to the terms of the divorce decree, under Article II, Section D, entitled "Retirement Benefits," appellant was to receive one-half of the value of the parties' three retirement accounts, less $10,000. At that time, appellant had an IRA worth approximately $29,000, while appellee had an IRA worth approximately $112,500 and a 401(k) plan worth approximately $68,500. The total value of the three plans was approximately $210,000. Therefore, appellant was entitled to receive one-half of $210,000 less $10,000, which equals $95,000. Article II, Section D of the divorce decree did not provide any further guidance as to how or when the funds were to be transferred to appellant. However, Article IX of the divorce decree stated that "[w]ithin 15 days after journalization of a Decree of Dissolution of the Marriage of the parties *** each party shall execute and deliver all deeds, conveyances, titles, certificates and other documents or instruments necessary and proper to effectuate all the terms of this Agreement."
On January 28, 2000, appellant filed a motion to enforce the terms of the decree, noting that she had not received the $95,000 in retirement benefits to which she was entitled. On February 28, 2000, a qualified domestic relations order was filed, providing that appellant was to receive $66,127.28 from appellee's 401(k) plan. This amount represented the $95,000 appellant was due under the retirement benefits section of the decree, minus the approximately $29,000 appellant had in her IRA at the time the decree was filed, which she retained. The retirement benefits were finally transferred to appellant on March 31, 2000.
A hearing was held on July 6, 2000 to determine the amount of interest due to appellant as a result of appellee's delay in transferring the funds to her. In its July 10, 2000 judgment entry, the trial court awarded appellant interest at the rate of 52.38 percent. Appellant has appealed this decision, arguing that she is entitled to interest at a rate of seventy-two percent for the six months between the time the decree was filed and the time the funds were transferred to her.
Appellant's notice of appeal was timely filed. On appeal, she makes the following three assignments of error:
 "[1.] The trial court erred in calculating the amount of interest due [a]ppellant at $9,015.19 as it was against the manifest weight of the evidence.
 "[2.] Assuming arguendo that that the [t]rial [c]ourt's methodology for the calculation of interest is fair and reasonable, the [t]rial [c]ourt nevertheless erred in using 365 days as a denominator in calculating the interest due [a]ppellant and should have used 180 days.
 "[3.] The trial court erred in overruling [a]ppellant's objections to hearsay evidence and by allowing it to be entered into evidence."
 In her first assignment of error, appellant contends that, in awarding post-judgment interest on the funds transferred by appellee to appellant, the trial court should have awarded her post-judgment interest of seventy-two percent, in lieu of the 52.38 percent it actually did award, as a result of appellee's delay in transferring $66,127.28 in retirement benefits to her. We disagree.
In support of her argument that she is entitled to more than the statutory rate of post-judgment interest set forth in R.C. 1343.03, appellant relies on Koegel v. Koegel (1982), 69 Ohio St.2d 355. InKoegel, the appellee executed a note in favor of the appellant that was to become due and payable five years after the divorce was finalized.Id. at 355. The Supreme Court of Ohio declined to apply R.C. 1343.03 inKoegel, because it "is applicable only to obligations that are due and payable ***." Id. at 358. The court did not hold that the statutory rate of interest is not applicable when awarding post-judgment interest in cases involving the division of marital property.
Subsequent to Koegel, a number of courts have held that R.C. 1343.03 is applicable in cases involving the division of marital property. In Wolochv. Foster (1994), 98 Ohio App.3d 806, 812, the Second Appellate District held that "[a]n order distributing martial assets from one party to another has the force of a money judgment, and the recipient is entitled to interest on any amount due and owing under the order but unpaid." In reaching this conclusion, the court cited to R.C. 1343.03, which provides that "when money becomes due and payable *** upon any settlement between parties *** and upon all judgments, decrees, and orders of any judicial tribunal for the payment of money ***, the creditor is entitled to interest at the rate of ten percent per annum."In Brannon v. Brannon
(June 27, 1997), Trumbull App. No. 96-T-5572, unreported, 1997 WL 401537, at 9, this court held that "R.C. 1343.03, which allows the imposition of interest upon money judgments, is applicable to domestic relations proceedings in which the trial court orders a distribution of marital assets." Similarly, in Farley v. Farley (Aug. 31, 2000), Franklin App. Nos. 99AP-1103 and 99AP-1282, unreported, 2000 WL 1231091, at 16, the Tenth Appellate District noted that Woloch "has been widely followed as requiring strict application of R.C. 1343.03 to mandate interest on amounts due and payable under a decree of divorce, to the extent that the amounts are calculable, due and payable."
In the case at hand, the trial court concluded that appellee delayed for ninety-five days before transferring to appellant the retirement benefits to which she was entitled under the decree. During that period, appellant earned a return of 52.38 percent on her IRA. Therefore, the court concluded that appellant was entitled to interest of 52.38 percent on the retirement benefits for the ninety-five days that appellee withheld them. On appeal, appellant contends that appellee earned a return of seventy-two percent on his IRA from October 1, 1999, the date of the divorce decree, until March 31, 2000, the date he transferred the retirement benefits to appellant.
We are unable to find any support in case law for the proposition that post-judgment interest in cases involving the division of marital property should be determined by the returns earned on investments by the parties during the period subsequent to the divorce decree, but prior to the actual division of the marital property. To the contrary, this court held in Brannon that R.C. 1343.03 is applicable to such cases. Further, R.C.1343.03 sets forth a statutory rate for post-judgment interest of ten percent. However, appellee failed to raise the issue of the applicability of the statutory interest rate either at trial or on an appeal. The issue of the applicability of R.C. 1343.03 is not before this court in the instant case.[1] Therefore, because appellant was not entitled to interest at a rate determined by the return on her investments, we find no merit in appellant's contention that she is entitled to post-judgment interest at the rate of seventy-two percent, and her first assignment of error is not well taken.
In her second assignment of error, appellant contends that the trial court erred in calculating the interest due on a per annum basis. We disagree.
To determine the amount of post-judgment interest due to appellant, the trial court multiplied $66,127.28 by 52.38 per cent and further multiplied by a fraction consisting of a numerator of ninety-five and a denominator of three hundred sixty-five. The statutory interest rate provided in R.C. 1343.03(A) is ten percent per annum. Therefore, the $66,127.28 should have been multiplied by 10 percent instead of 52.38 percent. Since the interest is per annum, we agree with the trial court that the appropriate denominator is three hundred sixty-five. Therefore, the appellant's assignment of error lacks merit.
We disagree, however, with the trial court's determination of the numerator as being ninety-five. The numerator represents the number of days that appellee was responsible for the delay in transferring the retirement benefits to appellant. The trial court arrived at this number based on the fact that the divorce decree was filed on October 1, 1999. From October 1, 1999 until December 7, 1999, appellee had taken no action to arrange for the transfer of funds. This represented a period of sixty-seven days. From December 8, 1999 until January 4, 2000, a period of twenty-eight days, the administrators of appellee's 401(k) plan were waiting for further instructions from appellee. Based on these facts, the trial court concluded that appellee was responsible for a ninety-five-day delay in the transfer of the funds.
We hold that it was an abuse of the trial court's discretion, rising to the level of plain error, to include the period from October 1, 1999 through October 16, 1999, in the calculation of the numerator. According to the terms of the divorce decree, each party had fifteen days after its journalization to "execute and deliver all deeds, conveyances, titles, certificates and other documents or instruments necessary and proper to effectuate all the terms of [the divorce decree]." The divorce decree was journalized on October 1, 1999. Clearly, the trial court did not contemplate that the parties to the divorce decree would fully comply with all of its provisions by the close of business on October 1, 1999. On the contrary, the trial court, by the terms of the divorce decree, allowed fifteen days for the parties to complete all necessary transactions. It would be patently unfair to penalize appellee for not having transferred funds to appellant during the period prior to October 16, 1999. Therefore, appellee should be held accountable for delaying the transfer of the funds for eighty days, as opposed to ninety- five.
After our adjustments to the trial court's judgment entry, the equation for the amount of interest to which appellant is entitled due to appellee's delay is $66,127 multiplied by 52.38 percent and further multiplied by a fraction consisting of a numerator of eighty and a denominator of three hundred sixty-five. Our calculations suggest that the amount of interest due appellant as a result of appellee's eighty-day delay in transferring the funds is $7,591.74.
In her third assignment of error, appellant contends that the trial court improperly admitted into evidence a series of letters between appellee's attorney and QDRO Consultants Company. Appellant suggests that the trial court improperly relied on the dates contained in the letters to conclude that appellant was partly at fault for the delay in the retirement benefits being transferred to her. Appellee's counsel questioned appellee regarding the letters during his direct examination. At the hearing, appellant objected to the letters because they had not been properly authenticated.
Evid.R. 901(A) requires that documents be authenticated as a condition precedent to admissibility. Seringetti Constr. Co. v. Cincinnati (1988),51 Ohio App.3d 1, 9, ("proof of a writing's execution and authenticity is required as a condition precedent to its admission into evidence"). Generally, a document is authenticated by a witness with knowledge. St.Paul Fire Marine Ins. Co. v. Ohio Fast Freight, Inc. (1982),8 Ohio App.3d 155, 158. In the case sub judice, appellee was not in a position to authenticate the letters, since he had neither written nor received them. Nor did his counsel attempt to have appellee authenticate the letters. Therefore, they were inadmissible.
Although appellant's assignment of error is well taken, we agree with appellee's assertion that the trial court could have determined the dates at issue without reference to the letters.
For the foregoing reasons, the decision of the trial court is affirmed in part and reversed in part and this matter is remanded for proceedings consistent with this opinion.
JUDGE DIANE V. GRENDELL, O'NEILL, P.J., concurs, FORD, J., dissents with Dissenting Opinion.
[1] The dissent would apply the "plain error" doctrine and reduce the interest rate applied in this case to the statutory rate set forth in R.C. 1343.03 to rectify what the dissent finds to be manifest injustice. However, the application of R.C. 1343.03 at this point in the proceedings would result in a manifest injustice. First, in this domestic relations action, the trial court made certain property distributions as part of a total economic remedy, which were not dependent on a ten percent interest rate. Adjusting the instant rate, by itself, does not respect the totality of the lower court's decision.
Second, allowing appellee to literally benefit from his failure to timely transfer property pursuant to the initial court decree would be an injustice. If a party in a domestic relations action can hold an interest earning asset and earn more than the statutory ten per cent interest rate, unscrupulous individuals will use R.C. 1343.03 to their unfair advantage; thereby vitiating the value of that statute as an incentive to comply with judgments, converting it, instead, into an impediment to complicate with judgments in domestic relations cases.