OPINION
{¶ 1} Defendant/Appellant James Tinney and Plaintiff/Appellee Kathleen Tinney were married on June 16, 1979. They have an emancipated adult daughter, Bridget, and a minor son, Dugan, born during the marriage. On January 26, 2001 Kathleen filed a complaint for divorce. Following extensive discovery and several hearing dates, the trial court issued its final judgment and decree of divorce on April 14, 2003. James appeals from that judgment.
 {¶ 2} On appeal James presents ten assignments of error. As his first eight assignments of error all attack the amount of spousal support that the trial court ordered him to pay to Kathleen, they shall be addressed together.
 {¶ 3} Appellant's first assignment of error:
 {¶ 4} "The Trial Court erred and abused its discretion by awarding excessive spousal support to appellee which is not based on necessity or need."
 {¶ 5} Appellant's second assignment of error:
 {¶ 6} "The Trial Court erred and abused its discretion by incorrectly calculating appellant's and appellee's income for spousal support purposes."
 {¶ 7} Appellant's third assignment of error:
 {¶ 8} "The Trial Court erred and abused its discretion in failing to find that the appellant's income for spousal support purposes was the $225,000.00 [amount] which the trial court found to be appellant's replacement value in the business valuation for Edge and Tinney Architects, Inc."
 {¶ 9} Appellant's fourth assignment of error:
 {¶ 10} "The Trial Court erred and abused its discretion in referring to appellee's `affidavit of income and expenses' filed on January 26, 2001 and not introduced at trial, for the purpose of determining appellee's expenses solely for Spousal Support Purposes, without also referring to appellant's `Affidavit of Income and Expenses' filed on February 6, 2001 or without taking testimony on the affidavits."
 {¶ 11} Appellant's fifth assignment of error:
 {¶ 12} "The trial court erred and abused its discretion when it failed to accept undisputed evidence that the parties could expect a seven to eight percent return on their investments if reasonably invested and took judicial notice on its own that the return to be expected was 3.35 percent."
 {¶ 13} Appellant's sixth assignment of error:
 {¶ 14} "The trial court erred and abused its discretion in failing to include appellee's best of america account as part of her non-marital assets in making its determination as to what appellee could expect as the yield on her investments."
 {¶ 15} Appellant's seventh assignment of error:
 {¶ 16} "The trial court erred and abused its discretion in its calculation regarding the parties' relative assets for the purpose of computing spousal support."
 {¶ 17} Appellant's eighth assignment of error:
 {¶ 18} "The trial court erred and abused its discretion in finding that appellee's monthly living expenses are $9,702.00."
 {¶ 19} A trial court has broad discretion in determining whether to award spousal support and in what amount. Kunkle v.Kunkle (1990), 51 Ohio St.3d 64, 67, 554 N.E.2d 83, citingCherry v. Cherry (1981), 66 Ohio St.2d 348, 355,421 N.E.2d 1293. Therefore, an appellate court will not overturn a spousal support award unless the award is unreasonable, arbitrary, or unconscionable. See, e.g., Kunkle, supra, citing Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140.
 {¶ 20} James' arguments center on his belief that Kathleen failed to establish a need for spousal support. However, while need was previously the criterion for spousal support under the old statutory scheme, under R.C. 3105.18, as modified in April 1991, need alone is no longer the basis for a spousal support award. Instead, the only relevant question is what is "appropriate and reasonable" under the circumstances of each case. See, e.g., Bowen v. Bowen (1999), 132 Ohio App.3d 616,626, 725 N.E.2d 1165. Need is still, of course, an important factor in considering what is appropriate and reasonable. Thus, James' argument that Kathleen failed to establish a need for such a large award of spousal support is somewhat misplaced. Nevertheless, we will review whether the trial court's award of spousal support was appropriate and reasonable.
 {¶ 21} In the final decree of divorce, the trial court ordered James to pay to Kathleen as spousal support $4,000.00 per month and yearly lump-sum payments of $26,400.00. Spousal support is to continue for 88 months. James argues that this amount is too high for several reasons.
 {¶ 22} First, James argues that the trial court underestimated Kathleen's potential earnings. While Kathleen does have two associate's degrees, her work experience during the marriage has been very limited because she undertook the primary responsibility for the care of the couple's children and home. Therefore, we cannot say that the trial court abused its discretion in imputing an annual income of only $15,000 per year, in addition to her interest income.
 {¶ 23} James next insists that the trial court should not have considered Kathleen's February 6, 2001 affidavit of income and expenses when it determined her monthly expenses. Indeed, it would be more orthodox for a party seeking spousal support to offer testimony regarding her expenses. However, because the affidavit was filed with the court, we cannot find that the court's consideration of that affidavit was an abuse of discretion. Moreover, when the information contained in that affidavit is combined with what testimony Kathleen did offer, the court's finding regarding her monthly expenses was not an abuse of discretion.
 {¶ 24} Third, James claims that the trial court erred in taking judicial notice of the 3.35% interest that can be earned on a 7-year treasury bond and applying that number in calculating the parties' investment income as opposed to the higher returns that might be available on a longer-term, riskier investment. We cannot find that the trial court abused its discretion in choosing to use the more conservative figure.
 {¶ 25} James also argues that the trial court erred in its calculation of his income. In support James claims that the trial court should not have used the average of his yearly income based upon the four previous years. When an individual's income fluctuates each year, there is nothing unreasonable about figuring an average yearly salary for purposes of either child or spousal support calculations, and the trial court did not abuse its discretion in doing so in this case.
 {¶ 26} Finally, James presents two arguments in support of his claim that the trial court erred in its calculation of the parties' interest income. For the following reasons, we find merit in both of these arguments.
 {¶ 27} James first insists that the trial court erred in using the complete value of his marital assets ($873,340.00) to calculate his potential interest income. Instead, he believes that the court should have excluded the value of his business and his home.
 {¶ 28} Throughout the record, it is apparent that there was never any intent for the business to be sold or liquidated. To the contrary, the business is James' primary source of income. Thus, there is no reason to include the value of his share of the business ($253,500.00) when calculating his interest income.
 {¶ 29} The primary residence of a party is not an income-producing asset. Therefore, it was unreasonable for the trial court to impute interest income for the value of any part of James' Ohio home. However, we agree with both parties that there is nothing wrong with imputing interest income for the value of James' second home in Florida.
 {¶ 30} Next, James points out that the trial court failed to include $253,643.00 of Kathleen's cash assets when calculating her yearly interest income. In an agreed order filed on July 17, 2001, the parties acknowledged that Kathleen had an account with McDonald Investments that was worth $465,341.17 and that the money in that account was Kathleen's separate property, not marital property. At trial, evidence of that account was introduced in testimony and in Plaintiff's Ex. 11. There also was evidence offered in testimony and in Plaintiff's Ex. 21 of another account with Best of America that was valued at $253,643.00. In the final decree the trial court discussed these two accounts together but failed to add the two amounts together.
 {¶ 31} For all of the foregoing reasons, James' second and sixth assignments of error are sustained. The other six assignments of error addressing the spousal support award are without merit and are overruled. Accordingly, this case will be remanded for recalculation of both James and Kathleen's incomes with the corrected interest incomes for each and for reconsideration of the amount of the spousal support order.
 {¶ 32} Appellant's ninth assignment of error:
 {¶ 33} "The trial court erred and abused its discretion regarding the disposition of the parties' motor vehicles, failing to use the de facto termination date for the value of the motor vehicles."
 {¶ 34} Here James argues that the trial court should not have relied on the March 26, 2002 stipulated values of the parties' five automobiles when awarding four of them to him in the divorce decree more than one year later. However, the record reveals that neither party ever provided the trial court with updated valuations of any of the automobiles. Instead, the only information before the court was the parties' March 26, 2002 stipulations as to their value. Accordingly, the trial court did not abuse its discretion in using those values. James' ninth assignment of error is overruled.
 {¶ 35} Appellant's tenth assignment of error:
 {¶ 36} "The trial court erred and abused its discretion by ordering appellant to pay to the appellee one-half of the initiation fee and membership for moraine country club and coral ridge country club."
 {¶ 37} Trial courts have broad discretion dividing marital property. Berish v. Berish (1982), 69 Ohio St.2d 318,432 N.E.2d 183. An appellate court may alter a trial court's property division only if the trial court abused its discretion in dividing the property, meaning that the trial court's attitude is unreasonable, unconscionable or arbitrary. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 450 N.E.2d 1140, citingCherry v. Cherry (1981), 66 Ohio St.2d 348, 421 N.E.2d 1293. In his final assignment of error, James argues that the trial court should not have ordered him to pay either half of Kathleen's initiation and membership fees to the Moraine and Coral Ridge Country Clubs or an equivalent amount of money. We agree.
 {¶ 38} It is undisputed that the primary reason that James joined the country clubs early in the marriage was to promote his business. In fact, the initiation costs and monthly fees of those memberships were paid by the business. Moreover, it is reasonable to believe that any value that the memberships may have would be attributable to the business, the value of which was equally divided between the parties.
 {¶ 39} More importantly, Kathleen was awarded a substantial spousal support order, certainly enough to provide for her own recreation. Therefore, we find it unreasonable for the trial court to order James to pay either Kathleen's country club membership and fees or an equivalent sum of money.
 {¶ 40} James' tenth assignment of error is sustained.
 {¶ 41} For all of the foregoing reasons, we affirm the final decree and judgment of divorce issued by the trial court in part and reverse in part. This case will be remanded for recalculation of both James and Kathleen's incomes with the corrected interest incomes for each and for reconsideration of the amount of the spousal support order.
Brogan, J. and Young, J., concur.