OPINION
{¶ 1} Denise Cronin is appealing the judgment of the Greene County Common Pleas Court, Domestic Relations Division, which granted her a divorce from Thomas Cronin, Jr. Denise and Thomas Cronin[1] were married in 1979. The couple had three children and at the time of the divorce, one of the children, Thomas Cronin, III, was still a minor. Although Denise had only a high school education, the couple had a substantial income from Thomas's employment. Thomas was the majority shareholder in Dayton Freight Lines, a company that he began with some of his premarital income. During the divorce proceedings, much testimony was taken regarding Thomas's income and the value of Dayton Freight Lines.
 {¶ 2} Both parties presented experts regarding the value of Dayton Freight Lines. Thomas's expert opined that the value of the business was $8,609,809.00 to $15,000,000.00. Denise's expert opined that the business had a value of between $13,000,000.00 to $32,000,000.00. On October 21, 2002, the trial court determined that the business had a fair market value of $9,866,000 and that $5,341,830 of that business was a marital asset.
 {¶ 3} Subsequently, Thomas filed a motion for relief from judgment, seeking for the distributive award to Denise to be paid out through a payment plan over several years. The trial court granted Thomas's motion and ordered Thomas, among other payments, to pay Denise $190,000 each year for ten years. The trial court ordered that the interest on the distributive award should accrue at "4%" for each applicable year, commencing on April 21, 2003.
 {¶ 4} Denise has filed this appeal, raising the following assignments of error.
 {¶ 5} "[1.] The trial court erred in its valuation of Dayton Freight Lines, Inc.
 {¶ 6} "[2.] The trial court erred by adopting appellee's payment plan for the distribution award.
 {¶ 7} "[3.] The trial court erred by arbitrarily assigning a 4 % interest rate on the unpaid balance of the marital asset award.
 {¶ 8} "[4.] The trial court erred in the amount of spousal support awarded to appellant.
 {¶ 9} "[5.] The trial court erred by assigning an arbitrary and capricious date upon which interest was to accrue on the marital asset award."
 Appellant's first assignment of error: {¶ 10} Denise argues that the trial court erred in determining the value of Dayton Freight Lines, Inc. was $9,866,000 when no expert opined that this was the value of the business and the court failed to indicate the basis in its decision for assigning this value to the business. We disagree.
 {¶ 11} When determining the value of marital assets, a trial court is not confined to the use of a particular valuation method but can make its own determination as to valuation based on the evidence presented. Jamesv. James (1995), 101 Ohio App.3d 668, 681; Focke v. Focke (1992), 83 Ohio App.3d 552,554; Zeefe v. Zeefe (1998), 125 Ohio App.3d 600, 612. Further, the trial court resolves questions of fact and weighs the credibility of the testimony and evidence. Bechtol v. Bechtol (1990),49 Ohio St.3d 21, 23. A trial court's valuation of marital property will not be reversed absent an abuse of discretion. James, supra. An abuse of discretion amounts to more than a mere error of judgment but rather connotes that the court's judgment was unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 12} In reaching its decision, the trial court noted that both Thomas and Denise presented expert testimony as to the value of Thomas's interest in Dayton Freight Lines. The trial court also noted that Dayton Freight Lines operated under a buy-sell agreement. Considering these factors, the court determined that the total value of the business was $9,866,000. At the hearing, Denise's expert opined that the value of the business was between $13,000,000 and $32,000,000. Thomas's expert opined that the value of the business was between $8,607,000 and $10,318,000. Both experts opined as to errors that they argued were found in the opposing expert's report. In his testimony, Thomas's expert opined that the fair market value of the business was $9,866,000. (10/01 Tr. 18).
 {¶ 13} In particular, Denise argues that Thomas's expert erred by deviating from standard accounting practices, and in using only income methods for determining valuation. Denise argues that Thomas's expert deviated from standard accounting practices by utilizing the EBITDA multiplier as one of its valuation methods. However, this valuation method was not used to reach the $9,866,000 valuation figure. Therefore, as this valuation method was not used to reach the $9,866,000 figure, it was not an abuse of discretion for the trial court to adopt this figure. Additionally, Denise argues that Thomas's expert's opinion should not have been relied upon because he used only "income methods". However, as we said earlier, the trial court is not bound to any particular valuation method. James, supra. Moreover, income methods have been used by courts to value businesses. Walker v. Walker, Butler App. No. CA 2001-07-159, 2002-Ohio-4374, ¶ 14; Kelley v. Kelley, Butler App. No. CA 2001-04-087, 2002-Ohio-2317, ¶ 19-21. The trial court has broad discretion in determining which expert to believe in assigning a value of marital property. Since expert evidence was presented that the value of the property was the figure the trial court chose and the trial court was in the best position to view the evidence, we cannot say that the trial court abused its discretion in valuing the marital property as it did. Denise's first assignment of error is without merit and is overruled.
 Appellant's second assignment of error: {¶ 14} Denise argues that the trial court erred in adopting a payment plan proposed by Thomas for paying her the distributive award that she was owed when the only expert testimony on the issue stated that Thomas could make the lump sum distributive award. We disagree.
 {¶ 15} A distributive award is "any payment or payments, in real or personal property, that are payable in a lump sum or over time, in fixed amounts, that are made from separate property or income, and that are not made from marital property and do not constitute payments of spousal support, as defined in section 3105.18 of the Revised Code." R.C. 3105.171(A)(1). A trial court is permitted to consider the liquidity of an asset when ordering its distribution and the economic desirability of keeping an asset intact. Berish v. Berish (1982), 69 Ohio St.2d 318, 319. Ohio appellate courts have found in similar cases in which the marital asset was not liquid and the owing spouse had significant debts that it was not an abuse of discretion to have the distributive award paid out through a payment plan over the course of several years. Drake v. Drake,
Butler App. No. CA2001-10-247, 2002-Ohio-6106, ¶ 26-28; Sanor v. Sanor,
Columbiana App. No. 2001 CA 0037, 2002-Ohio-5248, ¶ 32-36.
 {¶ 16} After the divorce decree, Thomas filed a motion for relief from judgment. In his motion, Thomas sought to have the $3,354,125.47 award paid to Denise through a specified payment plan. The trial court adopted Thomas's payment plan, which was as follows:
 {¶ 17} "(1) $359,813.97 immediately by transfer
 {¶ 18} "(2) $500,000 paid June 3, 2002
 {¶ 19} "(3) A payment of $594,311.50 on April 21, 2003
 {¶ 20} "(4) A payment of $190,000 on December 31, 2003 and on each December 31 thereafter, from 2004 through 2012, plus interest."
 {¶ 21} Denise argues that the trial court's adoption of Thomas's repayment plan was unreasonable, arbitrary and capricious because no expert testified on the method of payment of the distributive award and because Denise's interests in the marital assets were not adequately secured. At the hearing, Denise's expert opined that Thomas had the ability to make a lump sum payment of the distributive award. (5/2003 Tr. 53) Although not an expert, Thomas presented evidence at the hearing that he was only able to pay Denise from his salary of approximately $150,000 and draws from Dayton Freight Lines. However, Thomas's expert presented testimony that the business had a number of financial covenants with its lenders that required it to have a maximum total liabilities to equity ratio of not more that 3:1. As a result, a shareholder, such as Thomas, is limited in the amount of money it can withdraw from the company without violating these covenants. Further, because the business was a Subchapter S corporation, any money Thomas took out of the business would be considered a distribution and would result in similar distributions to the other shareholders. As the business already had over $22,000,000 in liabilities and an equity of only $8,000,000 at the time of the hearing, Thomas's withdrawal of the money owed Denise would likely result in a breach of the business's financial covenants. Additionally, the distribution would limit the business's ability to make capital expenditures for facilities and equipment. Contrary to Denise's argument, Thomas could testify to this himself and did not need an expert's testimony.
 {¶ 22} Further, the payment plan adopted by the trial court, gave Denise $1,454,125.40 immediately and gave her an additional $161,620.50 for her share of the marital home. Having the remainder spread out over ten years at $190,000 per year with interest is not arbitrary, unreasonable, or unconscionable. Therefore, considering the illiquidity of Dayton Freight Lines and the current debt to equity ratio of the business, we cannot say that the trial court abused its discretion in ordering the distributive award spread out through the payment plan suggested by Thomas. Further, the trial court secured the monetary asset with Thomas's shares of Dayton Freight Lines that were placed in escrow. Thus, Denise's interests in the marital asset were properly secured. Appellant's second assignment of error is without merit and is overruled.
 Appellant's third assignment of error: {¶ 23} Denise argues that the trial court abused its discretion in assigning an interest rate of 4% on the unpaid marital asset award when the statutory rate for interest on a judgment is 10%. We disagree.
 {¶ 24} R.C. 1343.03(A) states that "when money becomes due and payable upon * * * any settlement between the parties, * * * and upon all judgments, decrees, and orders of any judicial tribunal for the payment of money * * *, the creditor is entitled to interest at the rate of ten percent per annum." We have said that "[a]n order distributing marital assets from one party to another has the force of a money judgment, and the recipient is entitled to interest on any accrued amount due and owing under the order but unpaid." Woloch v. Foster (1994), 98 Ohio App.3d 806. In Woloch, the divorce decree provided that a certain amount of money was to be paid "as soon as possible" to one of that parties as her portion of a marital asset. Woloch, supra at 812. In Woloch, we determined that this amount that was to be paid "as soon as possible" was subject to the statutory 10% interest rate. Id.
 {¶ 25} However, in Clymer v. Clymer (Sept. 21, 2000), Franklin App. No. 99AP-924, the Tenth District Court of Appeals clarified that interest at ten percent per year is only applicable to divorce decree obligations if those obligations have been reduced to a lump sum judgment. See also,Rizzen v. Spaman (1995), 106 Ohio App.3d 95, 111; Dunbar v. Dunbar
(1994), 68 Ohio St.3d 369, 370 (noting that R.C. 1343.03 is not applicable to a child support arrearage that had not been reduced to a lump sum judgment.) Further, this Court stated in O'Quinn v. Lynn (Nov. 20, 1998), Montgomery App. No. 17023, that a party that receives a "`definite money judgment' with respect to obligations arising from a divorce decree is entitled to interest under [R.C. 1343.03] as a matter of law" only if the obligations have been reduced to a lump sum judgment.
 {¶ 26} If R.C. 1343.03 does not apply to the judgment, then the trial court has the discretion whether or not to award interest and to determine the interest rate. Drake v. Drake, supra ¶ 26; Sanor,
supra ¶ 32. A trial court is not required to award interest on the payment of a property division over time, but may exercise its broad discretion in determining whether interest is appropriate and in choosing the amount.Koegel v. Koegel (1982), 69 Ohio St.2d 355, 357.
 {¶ 27} In this case, the trial court awarded interest in the amount of "4% for each applicable year and adjusted to the annual prime rate for the year 2008. The annual prime rate will apply from January 1, 2008 through December 31, 2008 and each consecutive year thereafter." (9/22/2003 Judgment). Denise argues that the distributive award was a judgment that was due and owing and as such should have an interest rate of 10% per annum. However, although Denise did receive a distributive award from the trial court in the amount of $3,354,125.47, the trial court granted Thomas relief from that judgment and ordered that this amount be paid to Denise per a specified payment plan that included a provision for $190,000 to be paid each year over the course of ten years. Having analyzed the trial court's opinion in this matter, we find that Denise's distributive award as provided for with the payment plan did not amount to a lump sum judgment due immediately. Therefore, as the judgment was not a lump sum judgment, R.C. 1343.03 does not apply. Thus, the trial court had the discretion to order interest in the amount it found to be appropriate. We do not find that the trial court's award of interest in the amount of 4% per annum was an abuse of discretion or in violation of R.C. 1343.03. Denise's third assignment of error is without merit and is overruled.
 Appellant's fourth assignment of error: {¶ 28} Denise argues that the trial court erred in awarding her spousal support in the amount of $27,600 a year when Thomas testified that his annual income over the course of the past three years was between $1,000,000 and $1,500,000. We agree.
 {¶ 29} A trial court's determination of spousal support is reviewed by an appellate court only for an abuse of discretion. An abuse of discretion amounts to more than a mere error of judgment but connotes an attitude of the court that is unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 30} In determining whether to award spousal support, a trial court is guided by R.C. 3105.18(C)(1), which lists several factors for the court to consider in reaching its judgment.
 {¶ 31} "In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court shall consider all of the following factors:
"(a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;
"(b) The relative earning abilities of the parties;
"(c) The ages and the physical, mental, and emotional conditions of the parties;
"(d) The retirement benefits of the parties;
"(e) The duration of the marriage;
"(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;
"(g) The standard of living of the parties established during the marriage;
"(h) The relative extent of education of the parties;
"(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;
"(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;
"(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;
"(l) The tax consequences, for each party, of an award of spousal support;
"(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;
"(n) Any other factor that the court expressly finds to be relevant and equitable." (Emphasis added).
 {¶ 32} Denise argues that the trial court erred in awarding her only $2300 per month for ten years of spousal support because of the discrepancy in income between the parties. Thomas testified before the trial court that he had an annual salary of between $150,000 and $170,000. (5/2003 Tr. 33; 10/2001 Tr. 231.) Moreover, Thomas testified that he receives money in the form of draws from his business, Dayton Freight Lines. As a result, Thomas admitted that over the previous three years his before taxes income was $3,486,294, which averages to approximately $1,162,000 each year. (5/2003 Tr. 32-35) Thomas also admitted that his after taxes income over the previous three year period was nearly $1,450,000, making his average annual after taxes income approximately $483,000. (Id.)
 {¶ 33} Denise argues that the trial court abused its discretion in reaching the $2300 per month figure it awarded. In particular, Denise points to the R.C. 3105.18(C)(1)(b) the "relative earning abilities of the parties." Denise had not worked outside the home since 1986. She only possessed a high school education and at the time of the divorce had a minor child in her care. In contrast, Thomas made a significant annual income of over a million dollars. Moreover, Thomas was retaining the business and would thus be assured of maintaining his employment and income level. In contrast, Denise had no source of income other than her marital property. Clearly, Thomas had income sufficient to enable him to pay Denise more than $2300 per month.
 {¶ 34} Further, if the parties had been maintaining a standard of living of a couple with approximately $500,000 of disposable income each year and now Thomas would continue to have annual income of over a million dollars while Denise would only have an annual income of approximately $27,000, Denise's standard of living would have significantly fallen while Thomas would continue at the high standard of living he enjoyed while the parties were married. Thus, the trial court's order of spousal support creates a great disparity in the standard of living between the two parties and between Denise's marital and post divorced condition.
 {¶ 35} Additionally, Denise at the time of the divorce was nearly fifty years old and had not been employed for over fifteen years. She was coming out of an over twenty year marriage with only a high school education. Moreover, at the time of the divorce Denise was still caring for one of their minor children. The evidence would clearly have supported a determination that it may take a period of time for Denise to find appropriate employment and that even then, her potential employment would still likely provide significantly less income that Thomas's employment.
 {¶ 36} Thomas argues that Denise had little actual need for spousal support because her portion of the marital assets, which were approximately equal to Thomas's portion, would provide Denise with sufficient income. However, need is not one of the enumerated factors under R.C. 3105.18(C)(1). In Tinney v. Tinney, Montgomery App. No. 19906, 2004-Ohio-1160, ¶ 20, we addressed an argument by a husband that the wife should not receive spousal support because she failed to establish a need for it. In Tinney, we explained that need is no longer an enumerated factor under R.C. 3105.18, which instead directs a trial court to award what is appropriate and reasonable under the facts of the particular case. Id. Although need may be considered in determining what is reasonable and appropriate, the statute lists several factors for the court to consider in determining what is reasonable and appropriate, but does not set out need as a basis. Id.
 {¶ 37} Although the evidence when applied to the statutory factors listed in R.C. 3105.18 appear to support Denise's argument that she should have received spousal support in an amount greater than $2300 per month, we review a trial court's grant of spousal support only for an abuse of discretion. However, when we look to the trial court's judgment for guidance as to its reasoning for the award, we find no reasoning given as to how the court reached the amount of spousal support that it did. The trial court's judgment only gives its reasons justifying some award of spousal support, indicating that an award of spousal support is both reasonable and appropriate.
 {¶ 38} The Ohio Supreme Court in Kaechele v. Kaechele (1988),35 Ohio St.3d 93, 97 addressed a situation in which a trial court failed to explain how the trial court treated a financial asset of the parties. The Court held that when "allocating property between the parties to a divorce and in making an award of sustenance alimony, the trial court must indicate the basis for its award in sufficient detail to enable a reviewing court to determine that the award is fair, equitable and in accordance with the law." Id. at syllabus. A trial court's failure to indicate the basis for its award of spousal support will result in a reversal of the trial court's decision. Id. at 97. Moreover, even the trial court's statement that it considered the R.C. 3105.18 factors is not a sufficient indication of the basis of the court's spousal support award. Stafinsky v. Stafinsky (1996), 116 Ohio App.3d 781, 784. Thus, even if evidence was introduced below that supports the award of spousal support, the trial court still must "provide some illumination of the facts and reasoning underlying the judgment." Jenkins v. Jenkins,
Portage App. No. 2002-P-0121, 2004-Ohio-3332, ¶ 47.
 {¶ 39} In this case, as we stated above, the trial court failed to provide any of its reasons for choosing the amount of spousal support that it did. Pursuant to Kaechele, supra, this is grounds for reversal of the trial court's award of spousal support. Therefore, the judgment of the trial court as to spousal support is reversed and remanded for the trial court to consider the factors listed in R.C. 3105.18 and if it finds a spousal support award is necessary to grant such award while providing its findings and reasons supporting not only the grant of the award but its reasons for the amount in its judgment entry. Appellant's fourth assignment of error has merit and is sustained.
 Appellant's fifth assignment of error: {¶ 40} Denise argues that the trial court erred in assigning an arbitrary date from which the interest on the marital asset award would accrue. We disagree.
 {¶ 41} A trial court should order that interest begin on the date that the obligation becomes due and payable. Balog v. Balog (June 9, 1997), Warren App. No. CA96-08-77. In this case, because of Thomas's motion for relief from judgment, the payments to Denise did not become due and payable until April 21, 2003, which was the date Thomas was ordered to make the first distributive payment of $594,311.50. Therefore, we cannot say that the trial court abused its discretion in having the interest accrue from April 21, 2003 instead of the date of the original divorce decree. Appellant's fifth assignment of error is without merit and is overruled.
 {¶ 42} The judgment of the trial court is affirmed in part, reversed in part and remanded. On remand, the trial court should consider the factors in R.C. 3105.18(C) and determine a reasonable and appropriate spousal support award, being careful to give the basis for its determination of the amount of spousal support in its opinion.
Wolff, J. and Fain, J., concur.
[1] In order to avoid confusion, the parties will hereinafter be referred to by their first names.