OPINION
{¶ 1} John T. McKay and Kathleen G. McKay (now Glass) were divorced in 2001. Both parties filed motions for contempt based upon alleged violations of the divorce decree. Glass also filed a motion to set aside the divorce decree, pursuant to Civ.R. 60(B). Following a hearing, all of the motions were denied. Both parties now appeal from the decision of the trial court denying the motions.
 {¶ 2} McKay first argues that the trial court abused its discretion by denying his motion to cite Glass for contempt of the trial court's order, in the divorce decree, requiring her to pay McKay certain sums of money. Because one payment was due by December 1, the date of the other payment was not specified in the decree, the decree was received by Glass on December 8, and Glass took prompt steps to arrange for the payments, we conclude that the trial court did not abuse its discretion in declining to find Glass in contempt.
 {¶ 3} McKay next argues that the trial court abused its discretion by failing to find Glass in contempt for having failed to pay him the sum of $603,000 from a certain account. Because the evidence supports Glass's contention that she believed, in good faith, that her obligation under the divorce decree was to assign the account to McKay, rather than to pay him $603,000 from the account, which, at the time the payment was due, exceeded the monies in the account, and because Glass's belief, while incorrect, was not unreasonable, we conclude that the trial court did not abuse its discretion in declining to find Glass in contempt. Similarly, we conclude that the trial court did not err in declining to award attorney's fees to McKay.
 {¶ 4} McKay next argues that the trial court erred by failing to award statutory interest upon various payments ordered in its decree. We conclude that the trial court did not err in declining to award statutory interest upon those payments. Payments ordered at various times in the future do not constitute a lump-sum judgment. Confusion between the terms of the settlement read into the record at the settlement conference, wherein McKay was to receive an account, not a fixed sum, and the terms of the divorce decree subsequently entered, wherein McKay was to receive a specified sum, with which Glass took prompt steps to comply once the magistrate had resolved Glass's understandable confusion concerning the proper interpretation of the decree, made an award of statutory interest inappropriate.
 {¶ 5} Glass argues that the trial court erred by failing to make separate findings of fact and conclusions of law. We conclude that the trial court was not required, pursuant to R.C. 3105.171(G), to make separate findings of fact and conclusions of law, because the decree was the result of an in-court settlement. Glass cannot argue that the decree was not the result of an in-court settlement because the parties disagreed as to what was, in fact, settled, when the trial court adopted, as its decree, the version submitted by Glass.
 {¶ 6} Finally, Glass contends that the trial court exceeded its jurisdiction when it considered, and denied, her motion for relief from judgment while this appeal was pending. We conclude that the denial of a motion for relief from judgment, pursuant to Civ.R. 60(B), does not lie outside a trial court's jurisdiction, because it does not alter, modify or reverse a judgment that is being reviewed on appeal.
 {¶ 7} Because we find no merit in the arguments of either party, the judgment of the trial court is Affirmed.
 I {¶ 8} On July 14, 2001, the parties and their respective attorneys met with Judge Yarbrough, the trial judge assigned to the case, at the law offices of Winwood Crossman to attempt to reach a settlement agreement in their divorce action. The settlement conference began at 9:30 a.m. and continued until approximately 9:30 p.m. A court reporter was called in to record an agreement, which was recited by Judge Yarbrough. Both parties stated on that record that the statements made by the judge included the terms they wished to have included in the final decree. Both parties also acknowledged that they were entering into the agreement voluntarily.
 {¶ 9} Following the conference, the judge signed a final judgment and decree prepared and submitted by Glass's attorney. Of relevance to this appeal, the divorce decree stated that Glass "shall transfer to [McKay] the sum of $603,000.00 from her [Merrill Lynch] account, to be retained by [McKay] as his property free and clear of any right, claim or interest of [Glass]." The decree further stated, "[Glass] has a Perma Term II Life Insurance policy. [Glass] shall forthwith pay to [McKay] the sum of $8,189.00, which represents the cash surrender value in [the] policy." Finally, the trial court further ordered Glass to pay McKay the sum of $2,100,000 "as and for the property settlement in addition to the other division of assets set forth in this Court's order." The trial court further ordered this sum to be paid in as follows: "$50,000.00 upon the execution of this Judgment Entry; $500,000.00 as of December 1, 2001; $550,000.00 as of December 1, 2002; $500,000.00 on December 1, 2003; and $500,000.00 on December 1, 2004."
 {¶ 10} The record demonstrates that Glass did not receive a copy of the decree until December 8, 2001. Glass paid the life insurance surrender value and made the payment of $500,000 on December 27, 2001. Glass also transferred the securities held in her Merrill Lynch account to McKay on the same date. At the time of the transfer, the account was valued at $558,000.
 {¶ 11} In February, 2002, McKay filed a motion for contempt claiming that Glass had failed: (1) to pay temporary spousal support; (2) to timely pay the December 1, 2001 installment of $500,000; (3) to pay $603,000 from the Merrill Lynch account; and (4) to timely pay the surrender value of the life insurance policy.
 {¶ 12} Thereafter, Glass also filed a motion for contempt. A hearing was held before the magistrate on both motions on June 24, 2002. The magistrate overruled both motions. Of relevance to this appeal, the magistrate determined that Glass was not required to pay temporary spousal support. The magistrate also found that Glass should not be held in contempt for failing to make timely payments with regard to the $500,000 or the life insurance policy surrender value because she took steps to make the payments as soon as she received a copy of the decree. Finally, the magistrate found that Glass was required to pay McKay the sum of $603,000 from her Merrill Lynch account rather than to transfer the actual securities held in the account to him. The magistrate ordered Glass to pay McKay "a sum sufficient to insure that [McKay] receives $603,000.00 from [Glass's] account."
 {¶ 13} Both parties timely filed objections to the magistrate's decision. Then, on November 25, 2002, Glass filed a motion to vacate the decree, pursuant to Civ.R. 60(B).
 {¶ 14} The trial court overruled the objections. McKay then filed an appeal from the decision overruling his objections. Glass then filed a motion to stay proceedings on her Civ.R. 60(B) motion, pending disposition of this matter on appeal. That motion was denied and a hearing on the request to vacate the decree was held in May, 2003. Thereafter, the magistrate entered a decision denying the motion. Glass filed objections thereto, which were overruled by the trial court. Glass then filed an appeal from the denial of her motion. The cases were consolidated for our review.
 II {¶ 15} We begin with McKay's Second Assignment of Error which is as follows:
 {¶ 16} "The trial court erred both in findings of fact and law when it found plaintiff/appellee not in contempt regarding non-payment of support and distribution awards that were due and delinquent."
 {¶ 17} McKay contends that the trial court abused its discretion in denying his motion to cite Glass for contempt.
 {¶ 18} A court's contempt finding must be supported by clear and convincing evidence. Pohl v. Pohl, Montgomery App. 20001, 2004-Ohio-3790, ¶ 24, citation omitted. Absent an abuse of discretion, which implies that the court's reasoning is unreasonable, arbitrary, or unconscionable, an appellate court will not reverse the trial court's findings. Id. An appellate court will not weigh the evidence nor judge credibility of witnesses when reviewing factual findings of the trial court relating to its contempt determinations because both of these functions are solely within the province of the trial court. Id., citations omitted.
 {¶ 19} We begin with McKay's claim that the trial court erred by failing to hold Glass in contempt for failure to pay temporary spousal support for August, September, October and November of 2001. The magistrate found that the final decree did not contain any reference to the payment of temporary support and that any issues regarding support were merged into the final decree. Therefore, the magistrate declined to find Glass in contempt. The trial court affirmed the magistrate's decision. We agree and find no abuse of discretion in this decision.
 {¶ 20} Next, McKay complains that Glass failed to pay him the sum of $500,000, as well as the surrender value of the Perma Term II Life Insurance policy, in a timely manner. The decree required Glass to transfer the $500,000 by December 1, 2001. The decree did not specify a date for the transfer of the surrender value of the life insurance policy. The monies were not transferred until December 27. However, as noted by the magistrate, Glass did not receive the final decree until December 8, whereupon she took immediate action to have the monies transferred. Again, the magistrate declined to find that Glass wilfully violated the decree. Again, we find no abuse of discretion.
 {¶ 21} The next issue involves the Merrill Lynch account held by Glass. During the settlement conference, the trial judge noted that both McKay and Glass had separate accounts with Merrill Lynch and that Glass's account was valued at $603,000. It further appears from the transcript of the settlement conference that the parties and court intended that Glass would transfer the entire account to McKay. However, the decree indicates that Glass should transfer "the sum of $603,000 from her account" to McKay. On December 27, Glass transferred securities valuing $558,000 from the account to McKay. It appears that this constituted the entire account at the time of transfer.
 {¶ 22} At the hearing on the motion for contempt, Glass indicated that "it was her belief that she was simply to transfer all the securities in her Merrill Lynch account and that she was not obligated to pay $603,000 [and that] any gain or loss that occurred in the account prior to the transfer would accrue to the defendant and not to her." The magistrate went on to conclude that the terms of the decree were clear and unambiguous and required Glass to transfer the sum of $603,000, rather than securities, to McKay. However, the magistrate declined to find Glass in contempt for her actions based upon the finding that Glass had a good faith belief that she was only required to transfer the securities. The magistrate then ordered Glass to pay McKay "a sum sufficient to insure that [he] receives $603,000 from her account."
 {¶ 23} Given our review of the record, we conclude that the transcript of the settlement conference indicates that, arguably, Glass agreed solely to transfer the assets of the account rather than a certain sum of money. It is also clear that, upon receiving the decree, Glass took immediate steps to transfer the account to McKay. We cannot say that the magistrate and trial court abused their discretion in finding that Glass did not intend to violate the terms of the decree, and that she believed she had taken the appropriate actions as required by the decree. Moreover, Glass did transfer $558,000 worth of securities in a timely manner which corroborates a finding that she did not intend to defy the order of the court. Therefore, we cannot say that the trial court abused its discretion in denying the motion for contempt in this instance.
 {¶ 24} From our review of the record, we cannot say that the trial court abused its discretion in its determination that Glass was not in contempt of court. Accordingly, the Second Assignment of Error is overruled.
 III {¶ 25} McKay's First Assignment of Error states as follows:
 {¶ 26} "The trial court erred as a matter of law when it found that no statutory interest was due on unpaid/delinquent amounts from the divorce decree filed November 28, 2001."
 {¶ 27}
McKay contends that the trial court was required by R.C. 1343.03(A) to award interest at ten percent per annum on amounts owed to him by Glass. McKay's appellate brief is not entirely clear as to which amounts he believes require the addition of interest payments. From our reading of the brief, we conclude that he argues either that the trial court should have assessed interest on the yearly payments required by the decree or that the trial court should have assessed interest on the shortfall amount unpaid on the Merrill Lynch account.
 {¶ 28} Pursuant to R.C. 1343.03(A), "when money becomes due and payable upon * * * any settlement between the parties, * * * and upon all judgments, decrees, and orders of any judicial tribunal for the payment of money * * *, the creditor is entitled to interest at the rate of ten percent per annum." "This Court stated in O'Quinn v. Lynn (Nov. 20, 1998), Montgomery App. No. 17023, that a party that receives a `definite money judgment' with respect to obligations arising from a divorce decree is entitled to interest under [R.C. 1343.03] as a matter of law' only if the obligations have been reduced to a lump sum judgment." Cronin v.Cronin, Greene App. Nos. 02-CA-110, 03-CA-75, 2005-Ohio-301, ¶ 25. "If R.C. 1343.03 does not apply to the judgment, then the trial court has the discretion whether or not to award interest and to determine the interest rate." Id, ¶ 26, citations omitted. "A trial court is not required to award interest on the payment of a property division over time, but may exercise its broad discretion in determining whether interest is appropriate and in choosing the amount." Id., citation omitted.
 {¶ 29} The decree states that Glass "shall pay to [McKay] the following sums of money as additional property settlement payments: $50,000.00 upon the execution of this Judgment Entry; $500,000.00 as of December 1, 2001; $550,000.00 as of December 1, 2002; $500,000.00 on December 1, 2003; and $500,000.00 on December 1, 2004. These sums total the amount of $2,100,000.00 to be paid by [Glass] to [McKay] as and for the property settlement in addition to the other division of assets set forth in this Court's order."
 {¶ 30} In this case, our review of the trial court's decree indicates that the trial court intended to make a distributive award rather than a lump sum judgment. "A distributive award is `any payment or payments, in real or personal property, that are payable in a lump sum or over time, in fixed amounts, that are made from separate property or income, and that are not made from marital property and do not constitute payments of spousal support". Cronin, at ¶ 15. Since this case involves a distributive award rather than a lump sum judgment, R.C. 1343.03 does not apply, and therefore, the trial court did not abuse its discretion by denying interest. See, Cronin at ¶ 27 (marital portion of husband's interest in business paid out over period of years constitutes a distributive award).
 {¶ 31} We further conclude that the trial court did not abuse its discretion by denying the request for interest to be assessed on the Merrill Lynch account. Again, we conclude that Glass made a good faith attempt to comply with the decree by transferring the account, rather than cash, to McKay. Also, based upon the discussions conducted during the settlement hearing, it was not clear that the trial court intended to reduce this obligation to a lump sum judgment. Specifically, from the language used by the trial court in the settlement hearing, it appears that the trial court intended to award the account, which at the time was owned by Glass and was valued at $603,000, to McKay, and that the trial court intended that McKay should bear the burden of any loss on the account occurring between the date of the conference and the date of transfer. In other words, the account, not a lump sum amount, was to be transferred. Furthermore, the decree did not specify any date for the transfer of the account. Based upon the record, we cannot say that the trial court abused its discretion by denying McKay's request for an award of interest.
 {¶ 32} The First Assignment of Error is overruled.
 IV {¶ 33} McKay's Third Assignment of Error is as follows:
 {¶ 34} "The trial court erred in finding that no award in attorney fees was justified against [glass] for failure to perform as ordered pursuant to the divorce decree of November 28, 2001 which necessitated motions for statutory interest, contempt findings, and a hearing for time expended in compelling [glass] to obey the court's order."
 {¶ 35} McKay contends that the trial court should have granted his request for an award of attorney fees sought in conjunction with his motion for contempt.
 {¶ 36} A decision to award or not to award attorney fees lies within the sound discretion of the trial court. Waggoner v. Waggoner, Greene App. No. 2002-CA-126, 2003-Ohio-4719, ¶ 47, citing Rand v. Rand (1985),18 Ohio St.3d 356, 359.
 {¶ 37} As noted in Part II above, we agreed with the trial court that a finding of contempt is not compelled in this case. Additionally, it appears that both parties have the resources to pay their own fees. Therefore, we cannot say that the trial court abused its discretion in denying attorney fees. Therefore, McKay's Third Assignment of Error is overruled.
 V {¶ 38} Glass's First Cross-Assignment of Error states as follows:
 {¶ 39} "The trial court erred in failing to make written findings of fact and conclusions of law as required by R.C. 3105.171(G)."
 {¶ 40} Glass contends that the trial court failed to comply with R.C.3105.171(G) because it failed to make its own findings of fact and conclusions of law.
 {¶ 41} R.C. 3105.171(G) provides "in any order for the division or disbursement of property or a distributive award made pursuant to this section, the court shall make written findings of fact that support the determination that the marital property has been equitably divided and shall specify the dates it used in determining the meaning of `during the marriage'."
 {¶ 42} This court has stated that a trial court need not make written findings and conclusions when the parties have stipulated to an in-court settlement agreement. See, Van Hoose v. Van Hoose (April 7, 2000), Champaign App. No. 99 CA 18. In that case we further stated: "When the parties to a divorce enter into an in-court settlement agreement, the court may accept the agreement even if one party tries to repudiate it so long as the court is convinced that the agreement was not procured by fraud, duress, overreaching, or undue influence." Id., citation omitted.
 {¶ 43} Glass contends that she did not enter into an in-court settlement since the settlement conference took place at her own attorney's office. Glass also argues that the trial court did not "read the terms of the alleged settlement agreement into the record in `open court,'" but "merely read from his notes to an unofficial reporter while seated in [the attorney's office". Glass further claims that the trial court did not adopt the agreement of the parties but instead adopted a decree submitted by her attorney. Glass contends that these circumstances do "not obviate the court's responsibility to issue written findings of fact supporting its division of marital property."
 {¶ 44} Our review of the record of the settlement conference reveals that the following colloquy took place at the end of the conference:
 {¶ 45} "The Court: In the interest of finality and to resolve the issues, in the interest of your children as well, you have agreed to this. Is that correct?
 {¶ 46} "Mrs. McKay: Yes.
 {¶ 47} "The Court: Has anyone threatened you with anything or forced you to do this, other than what we have said on the record, this is your free and voluntary agreement?
 {¶ 48} "Mrs. McKay: Yes.
 {¶ 49} "* * *
 {¶ 50} "The Court: It's the totality of the circumstances where both the parties say, we wish it were otherwise, it's not exactly the way we'd like to do it but, given the totality of the circumstances, including the length of trial, the costs of litigation, the perils of litigation, the likelihood of appeal, the time that this might go on and on, that the parties have entered into this agreement. Have I misspoken?
 {¶ 51} "Mr. McKay: No.
 {¶ 52} "The Court: Mrs. McKay, have I misspoken?
 {¶ 53} "Mrs. McKay: No.
 {¶ 54} "* * *
 {¶ 55} "The Court: Who will journalize?
 {¶ 56} "[Glass's attorney]: I will.
 {¶ 57} "The Court: There being nothing further, the Court determines, from the testimony of the parties and from the review of the records, that the agreement between the parties is equitable, that the parties freely and voluntarily entered into this agreement, that, in truth, it is the totality of the circumstances that brings the parties to this agreement. And it is, in both their cases, in the interest of their children as well, even though they're not minors. They have both expressed profound affection for their children and believe that this would be of assistance to them in their relationship with their children. We'll accept the agreement."
 {¶ 58} We turn to Glass's first claim that there was no in-court settlement and that the trial judge merely read his notes into the record. She contends that these facts demonstrate that the trial court was required to comply with R.C. 3107.171(G). We find no merit to this argument. A further review of the record shows that both parties were present at the conference with counsel. The trial judge was present as was a court reporter. The parties reached an agreement read into the record in front of the trial court and the court reporter. The trial court read the agreement as he had reduced it to written notes during the course of the conference. Further, the parties indicated that this was their agreement and that they had entered into the agreement freely and voluntarily. The mere fact that the parties were not in court, but were at an attorney's office is a distinction without a difference.
 {¶ 59} Finally, Glass appears to argue that because both parties submitted proposed decrees, the trial court was required to reject both and make its own findings. We find this argument without merit. The decree proposed by Glass and her attorney was the decree adopted by the trial court. Therefore, any language in the decree was language she requested and we will not now hear a complaint that the decree was invalid.
 {¶ 60} Glass's First Cross-Assignment of Error is overruled.
 VI {¶ 61} Glass's Second Cross-Assignment of Error provides as follows:
 {¶ 62} "The trial court erred in ruling on ms. glass's motion for relief from judgment under rule 60(b) after the parties had appealed the case, divesting the trial court of jurisdiction."
 {¶ 63} Glass contends that the trial court did not have jurisdiction to decide her Civ.R. 60(B) motion. In support, she notes that her notice of appeal was filed prior to the hearing on the motion.
 {¶ 64} "Where a party files a timely notice of appeal from a final order, this action divests the trial court of jurisdiction to alter the order." Piro v. National City Bank, Cuyahoga App. Nos. 82885 and 82999, 2004-Ohio-356, ¶ 43, citations omitted.
 {¶ 65} While the better practice would have been for the trial court not to have considered the Civ.R. 60(B) motion until after the resolution of this appeal, the fact remains that because the trial court denied the motion, the trial court did not alter, modify or reverse its judgment. Therefore, the trial court did not act outside the scope of its jurisdiction.
 {¶ 66} Glass's Second Cross-Assignment of Error is overruled.
 VII {¶ 67} Glass's Final Cross-Assignment of Error states:
 {¶ 68} "The trial court erred in denying the motion to vacate in light of the failure to make written findings of fact in support of the divorce decree, and such error constitutes an abuse of discretion."
 {¶ 69} Glass contends that, as argued in her First Cross-Assignment of Error, the trial court was required to make its own written findings of fact and conclusions of law. Based upon that argument, she claims that the trial court was required to grant her request for relief from judgment pursuant to Civ.R. 60(B).
 {¶ 70} For the reasons set forth in our disposition of her First Cross-Assignment of Error we find this argument without merit. Thus, Glass's Third Cross-Assignment of Error is overruled.
 VIII {¶ 71} All of McKay's and Glass's assignments of error having been overruled, the judgment of the trial court is affirmed.
Wolff and Grady, JJ., concur.